**In re David LEVAY.**

**No. 04–05–00451–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 10, 2005.

---

**24.** *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

**25.** TEX. PENAL CODE ANN. § 29.02(a).

**26.** *See id.* § 19.03(a)(2).

**27.** *See Boykin,* 818 S.W.2d at 785.

**28.** *See id.*

Karen Dalglish Seal, Law Office of Karen Dalglish Seal, P.L.L.C., San Antonio, for appellant.

Ann E. Buonocore, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Relator David Levay seeks a writ of mandamus ordering the trial court to vacate its temporary orders of June 28, 2005. Because we conclude that the trial court abused its discretion in entering temporary orders that had the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child, we conditionally grant Levay's petition.

### BACKGROUND

The underlying family law proceeding arises from a suit for modification and bill of review filed by Tabitha Dennis concerning visitation and custody of her daughter, P.C.L. Under a final order, David Levay, P.C.L.'s father, was designated as the person who has the exclusive right to designate the primary residence of P.C.L., and Dennis's visitation with P.C.L. was ordered to be supervised.[2] Dennis had little contact with P.C.L. for four years, but has now filed a bill of review and suit for modification. On June 28, 2005, the trial court entered temporary orders in this case. Finding that outside resources were necessary to facilitate visitation between

[2] Dennis's bill of review argues that this order should be set aside because she was not served with citation. To date, the trial court has not ruled on Dennis's bill of review.

P.C.L. and Dennis, the trial court ordered P.C.L. to be admitted to the Rachel Foundation, a residential facility located in Kerrville, Texas, for an indefinite period of time "at the discretion of the Rachel Foundation." The trial court also ordered that Dennis would have temporary care and control of P.C.L. while P.C.L. is participating in the program at the Rachel Foundation and that all periods of possession shall be determined by the Rachel Foundation. Levay seeks mandamus relief from this order, arguing that the trial court abused its discretion.

## STANDARD FOR MANDAMUS RELIEF

 Mandamus will lie only to correct a clear abuse of discretion. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding). A clear abuse of discretion occurs when a court issues a decision which is without basis or guiding principles of law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding). Moreover, there must be no other adequate remedy at law. *Walker,* 827 S.W.2d at 840. Mandamus is intended to be an extraordinary remedy, available only in limited circumstances. A writ of mandamus will issue "only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989) (orig.proceeding).

 Here, because the trial court's temporary orders are not appealable, mandamus is an appropriate means to challenge them. *See, e.g., Little v. Daggett,* 858 S.W.2d 368, 369 (Tex.1993) (orig.proceeding) (holding that mandamus is appropriate remedy because temporary order granting visitation is not appealable); *Dancy v. Daggett,* 815 S.W.2d 548, 549 (Tex.1991) (orig.proceeding) (holding that mandamus is an appropriate remedy be-cause "the trial court's issuance of temporary orders is not subject to interlocutory appeal"); *In re Garza,* 153 S.W.3d 97, 100 (Tex.App.-San Antonio 2004, orig. proceeding) (holding that mandamus is appropriate to challenge temporary orders); *In re Ostrofsky,* 112 S.W.3d 925, 928 (Tex.App.-Houston [14 Dist.] 2003, orig. proceeding) (holding that because temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are not subject to interlocutory appeal, mandamus is an appropriate means to challenge these orders); *In re Lemons,* 47 S.W.3d 202, 203–04 (Tex.App.-Beaumont 2001, orig. proceeding) (same). We must, therefore, consider whether the trial court committed a clear abuse of discretion in entering its temporary orders.

## DISCUSSION

 Although section 156.006 of the Texas Family Code allows a trial court to enter temporary orders in a suit for modification, it limits when a trial court can change the designation of the person who has the exclusive right to designate the primary residence of the child:

(a) Except as provided by Subsection (b), the court may render a temporary order in a suit for modification.

(b) While a suit for modification is pending, the court may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child under the final order *unless:*

(1) the order is necessary because the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development; ...

TEX. FAM.CODE ANN. § 156.006 (Vernon Supp.2004–05) (emphasis added).

The Fourteenth Court of Appeals has granted mandamus relief when a trial court entered temporary orders with the effect of changing the person with the exclusive right to designate the primary residence of the child. In *In re Ostrofsky*, 112 S.W.3d 925, 926 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding), pursuant to a final divorce decree, the mother of the children had been designated as the person with the exclusive right to determine the children's primary residence. Six months after the final order was entered, the mother filed a petition to modify the order, seeking temporary orders prohibiting the father from contacting her and requesting a temporary restraining order and temporary injunction. *Id.* In response, the father filed a counter-petition in which he requested that the court modify his periods of possession and the parties' rights and duties. *Id.* at 927. In its temporary orders, the trial court ordered that until the parties had undergone a full psychological evaluation, it was not in the best interest of the children to live with either parent. *Id.* Thus, the trial court ordered that the children "shall attend a boarding school commencing with the 2003–2004 academic semester and shall remain in that boarding school or any subsequent school approved by this court until further order of the court." *Id.* at 929. The Fourteenth Court of Appeals emphasized that because the order required the children to leave the mother's residence and live at boarding school, it deprived the mother "of any discretion inherent in the right to determine the children's primary residence." *Id.* As such, the court of appeals held that the temporary order effectively deprived the mother of the right to determine the children's primary residence. *Id.*

The court then turned to whether there was any evidence that the order was necessary because the children's present living environment may endanger the children's physical health or significantly impair the children's emotional development.[3] *See* TEX. FAM.CODE ANN. § 156.006(b)(1) (Vernon Supp.2004–05). The court held that because there was no evidence of specific acts or omissions by the mother that would support a finding by the trial court under subsection (b)(1), the trial court abused its discretion in entering the temporary orders. *In re Ostrofsky*, 112 S.W.3d at 932. As such, the court of appeals conditionally granted the petition for writ of mandamus. *Id.*

Like in *In re Ostrofsky*, the trial court here has effectively deprived Levay of the right to determine P.C.L.'s primary residence. The trial court has ordered P.C.L. to be admitted to the Rachel Foundation, a residential facility, for an indefinite period at the sole discretion of the Rachel Foundation and has given Dennis temporary care and custody of P.C.L. for that indefinite period of time that P.C.L. remains at the Rachel Foundation. And, according to the order, the Rachel Foundation is to establish all periods of possession. Further, the trial court ordered Dennis and Levay to comply with the Rachel Foundation's "Program Admission Protocols." Under these protocols, the Rachel Foundation "does not possess the resources to inform all attorneys and involved parties at all times." Thus, it requests that "one

---

3. In its order, the trial court had found that attending boarding school was in the best interest of the children. *In re Ostrofsky*, 112 S.W.3d at 929. The court of appeals, however, explained that section 156.006(b)(1) did not allow changing the designation if it was in the best interest of the children; under subsection (b)(1), the designation could only be changed if the child's present living environment endangered the child's physical health or significantly impair the children's emotional development. *See id.*

agency or person be designated for liaison purposes or that [it] be authorized to communicate directly with the Court." Additionally, the "security" section of these protocols provides in part that "[t]he whereabouts of participants may, at times, be known only to [the Rachel Foundation] and to the Court, its designated representative or responsible agency."[4] At the hearing, Pamela Hoch, program director of the Rachel Foundation, testified that the program at the Rachel Foundation depends on participation of the individual. According to Hoch, Dennis and P.C.L. would be admitted to the Rachel Foundation and the visit would be "open-ended" until "such times as hopefully the relationship [between Dennis and P.C.L.] is normalized." Thus, in essence, the trial court has given the Rachel Foundation the sole discretion to determine where P.C.L. will live and who she will see for an indefinite period of time. Even periods of possession will be at the Rachel Foundation's sole discretion.

Like in *In re Ostrofsky*, by giving the Rachel Foundation sole discretion to determine where P.C.L. will live and by failing to limit the period of time for the exercise of such discretion, the trial court has rendered a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child under the final order. Further, there is no evidence that P.C.L.'s present living environment with Levay endangered her physical health or significantly impaired her emotional development. As such, the trial court has abused its discretion by rendering a temporary order in violation of section 156.006.[5]

## CONCLUSION

Because the temporary orders of the trial court have the effect of depriving Levay of his right to determine P.C.L.'s primary residence, we conditionally grant Levay's petition and direct the trial court to withdraw its order of June 28, 2005. Only if the trial court fails to comply will we issue the writ.

Dissenting opinion by SANDEE BRYAN MARION, Justice.

SANDEE BRYAN MARION, Justice dissenting.

The majority has determined that the trial court entered "temporary orders that had the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child." Because I do not agree that the temporary orders had this effect and because I believe relator affirmatively waived his right to raise this complaint, I respectfully dissent.

## DISCUSSION

Although Tabitha Dennis, a possessory conservator of her daughter,[1] has had little

---

4. Indeed, the trial court has ordered the Rachel Foundation to report to the trial court's parenting coordinator and ordered the parenting coordinator to disseminate information from the Rachel Foundation to the attorneys and parties *at her discretion*.

5. We recognize that the Rachel Foundation is required under the order to make recommendations to the parenting coordinator by a certain date. However, the order also allows the Rachel Foundation to request extensions in-

definitely. And, there is no indication in the order when the trial court intends to revisit the issue. Thus, we believe that although the order requires recommendations to be made, it is still indefinite and open-ended.

1. Dennis's appointment as possessory conservator is based on a statement made by Dennis's attorney during the bill of review hearing. However, the parties have provided the court with a copy of only the February 22,

contact with P.C.L. for four years, she has spent more than a year in court, attending at least four hearings and meeting with a variety of professionals, attempting to resume visitation with P.C.L. Her efforts have been thwarted, at least in part, by P.C.L.'s own behavior. For this reason, a hearing was held on April 14, 2005, at which time the trial court discussed with the parties the need to have supervised visits between P.C.L. and Dennis at a neutral location. Relator's attorney not only did not object, she agreed that putting P.C.L. "in some place [n]eutral might be a good plan." Later, the court asked:

> Okay. Then, if the idea is to move—that [P.C.L.] has got serious problems. She's a great gal and she's got, you know, a lot of potential and everything else, but she's got this giant soon to be crippling chip on her shoulder about mom, okay, that is hard for me to comprehend that she needs to get over, and it doesn't sound like these parties are working it out to get it over with. Is this weekend at Rachel, provided some people can get the money together for this program, is that something that might move them in the right direction?

Relator's counsel responded, *"Your honor, I would agree that something like that, maybe even every other weekend would be fine. It would probably work;* however, my clients have absolutely no money, and this thing has broken them just without even paying an attorney." At the end of the hearing, the trial court told relator's attorney to ensure her clients understood "that they need to start thinking in terms of there will be an extended visitation with mom so they cannot make all the summer plans."

At no time did relator's attorney raise any objection to visitation being coordinated through the auspices of the Rachel Foundation.

On June 22, 2005, the trial court conducted a hearing at which the terms of the temporary orders were discussed. Again, relator's counsel raised no objections to the Rachel Foundation.[2]

> Court: Number 4: It's ordered that all periods of possession as established by the Rachel Foundation are to be complied with by the parents and that they are ordered to cooperate in the transfer process of the child. Okay. That implies that the Rachel Foundation is going to determine when possession is going to occur. Is that what you intended it to say?
>
> Dennis's attorney: Yes, Your Honor, because that's—
>
> Court: *Is that agreed?*
>
> Relator's attorney: *That's what we understood from the hearing in April, that they would determine when.*
>
> . . .

2000 order naming Dennis and relator joint managing conservators.

**2.** The only objections raised by relator's attorney related to the transfer provisions and attendance at a summer camp. When the trial court ordered that transfer would take place at either the office of the parenting coordinator or, if P.C.L. did not cooperate, at a juvenile detention facility, counsel objected on the grounds that P.C.L. had no criminal background. Later, counsel raised a potential conflict with the timing of the visitation due to a summer camp in which P.C.L. had already been enrolled. The court noted that resolution of the summer visitation had been pending since April, but delayed until June. The court told counsel the camp had to be cancelled. However, counsel asked that "if the child's relationship with her mother is . . . normalized, as the Rachel Foundation characterizes it, would it be possible if it normalizes before camp, for her to be able to attend that camp?" The court said, "if it can be accommodated, we will."

Court: ... And then I have-the next one will be Number 5:[It] is further ordered that all transfers shall take place at a neutral location either designated by the Court or a representative by the Rachel Foundation. Okay. I would rather just put Kids Exchange, KidShare, or a place designated by the Rachel Foundation. *Is that okay with you?*

...

Relator's attorney: *I believe, yes, it is, Judge ....*

...

Court: Okay. We're almost done here. Order Number 9 will be: It is further ordered that ... [Dennis] shall have the temporary care and control of the minor while she is participating in the Rachel Foundation program with the child and while not in the care and control of [relator]. That sounds reasonable.

What—that's your proposed language. *So do you agree with that language?*

Relator's attorney: *That's fine, Your honor, because I believe that's what the Rachel Foundation needs to do is effectively intervene.*

...

Dennis's attorney: And the other thing is the judge [who presided over the April hearing] had ordered that my client have the summer with the child.

Relator's counsel: I disagree with that, Judge. That's not what she said. *It was going to be determined by the Rachel Foundation.*

Now, for the first time, in the petition for writ of mandamus, relator objects on the grounds that the temporary orders effectively change the person with the exclusive right to designate P.C.L.'s primary residence of the child. Based on the above, I would hold that relator waived this complaint and deny the petition for writ of mandamus.

However, even if relator did not waive his complaint, I do not believe the temporary orders effectively change the designation of the person who has the exclusive right to designate P.C.L.'s primary residence. In his petition, relator relies on the court's use of the word "indefinitely" in its order that visitation "shall continue at the discretion of the Rachel Foundation." However, it is clear from the record and the acquiescence of relator's counsel that the parties understood the intervention of the Rachel Foundation would occur only during the summer break, and not for an "indefinite" period.

During the June 22nd hearing, several discussions arose concerning summer visitation.

Court: All right. I'm going to add to paragraph 7: Tabitha Dennis shall pay 100 percent of the cost of the Rachel Foundation. That's what you're agreeing to?

Dennis's attorney: Yes.

Court: All right. *Now, we're just dealing with the summer visitation.*

During a later discussion regarding a decision on where P.C.L. would spend all or part of her summer, the court asked both the Rachel Foundation program director, Pamela Hoch, and the court-appointed parenting coordinator, Dr. Dina Trevino, if it was their understanding that the Rachel Foundation in conjunction with Trevino would decide the frequency and duration of the visitations, both witnesses responded affirmatively. The court then stated, "Okay. All right. Let's do it that way then." Relator's counsel responded, "Okay. Thank you, Judge."

Finally, the court discussed the Rachel Foundation's discretion:

Court: Okay. Let's go back to my original question; and that is, assuming they start on the 4th of July, how soon can you get recommendations on summer visitation and custody visitation?

. . .

Hoch: For about a week.

Court: Okay.

Dennis's attorney: So they stay there for the whole week, just so the Court is aware of that.

Court: I understand.

Hoch: The visit is open-ended from the child's perspective. If the child knows that the child is coming there for three days or the week, the child will typically go into lockdown and just hold their breath for a week. The visit is open-ended. There is no determined end. Otherwise, the child will just hold her breath.

Court: All right. I would like you to attempt to do it by July 15th.

Hoch: Yes, Your Honor.

Court: And you'll be entitled to an extension of two weeks if you would post it.

Hoch: Can you please clarify that, Your honor?

Court: Sure. What I would like to do is for the order to reflect that at the discretion of the Rachel Foundation and the parenting coordinator, the recommendation on visitation will be made by July 15th. If it cannot be completed by that time, at the discretion of the Rachel Foundation and Dr. Trevino, then the alternate date will be July 29th, okay?

Hoch: Okay.

. . .

Dennis's attorney: Just so that I'm clear, when she said that she makes a recommendation, the child will be there for that whole time. So are you saying that on the 15th if she reports and says things are doing great, she stays for the rest of the month? *She stays until school starts?*

That's what—I think that's what I understand from the foundation is that it's open-ended. So the child shows up on the 4th and doesn't leave until—

Court: It will be at their discretion?

Dennis's attorney: Right.

Court: Yes. That's what I mean.

Hoch: Until such time as hopefully the relationship is normalized, sufficient for the child to resume a normal relationship with her parents.

Dennis's attorney: *But that can extend up through the date school-before school starts?*

Hoch: Hypothetically, yes.

The record reveals the trial court intended only that P.C.L. would stay at the Rachel Foundation, at most, from July to the start of the school year so as to provide the Foundation with enough time to work on reunification with Dennis and P.C.L. and make its recommendation without any manipulation on the part of the child. The order effectively accomplishes what a trial court is empowered to do: enter temporary orders regarding summer visitation with a parent conservator. For this reason, I would only conditionally grant mandamus relief and direct the trial court to modify its order to reflect the court's and parties' intention that visitation between P.C.L. and Dennis be facilitated by the Rachel Foundation during the summer.