**In re Jennifer SANCHEZ.**

**No. 04–06–00809–CV.**

Court of Appeals of Texas, San Antonio.

April 4, 2007.

---

Original Mandamus Proceeding.[1]

Sue M. Hall, Law Office of Sue M. Hall, San Antonio, for appellant.

Dan Carabin, Jeffrey S. Bernstein, Law Office of Jeffrey S. Bernstein, San Antonio, for appellee.

1. This proceeding arises out of Cause No. 2004–EM5–01458, styled *In the Interest of J.H.*, pending in the 37th Judicial District Court, Bexar County, Texas, the Honorable David A. Berchelmann, Jr., presiding. However, the challenged order was signed by the Honorable John D. Gabriel, Jr., presiding judge of the 131st Judicial District Court, Bexar County, Texas.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

Jennifer Sanchez seeks a writ of mandamus to compel the trial court to vacate temporary orders in a child custody modification suit. Because the trial court failed to apply the law properly and Sanchez has no remedy by appeal, we conditionally grant the relief requested.

FACTUAL AND PROCEDURAL BACKGROUND

Sanchez is the mother of three-year-old J.H. In June 2006, Sanchez and Priest Anthony Holmes reached an agreement in a suit to establish the parent-child relationship between Holmes and J.H. At the time, Sanchez was attending a vocational training program in Houston during the week and returning to San Antonio on weekends. Meanwhile, J.H. stayed in San Antonio with Sanchez's mother and stepfather and attended daycare. Holmes, who also lived in San Antonio, was not working due to an injury. Under the final agreed order, Sanchez had the "exclusive right to designate the primary residence" of J.H. "without regard to geographic location." Holmes had overnight visits with J.H. either one night or three nights per week until December 2006, when Sanchez's training program ended.[2] Thereafter, Holmes's periods of possession would follow the standard possession order.

In August 2006, Sanchez was involved in an altercation that led to her arrest.

Based on this incident, Holmes filed suit to modify the final order, seeking primary custody of J.H. Holmes requested temporary orders removing Sanchez as the person with the exclusive right to designate J.H.'s primary residence, alleging the child's present environment placed her in jeopardy. Following an evidentiary hearing, the trial judge denied the temporary orders sought by Holmes. After discussing the evidence, the trial judge stated, "I guess what's bothered the [c]ourt more is this issue, you know, and Mr. Holmes talked about it a lot yesterday, with regards to why do the grandparents have [J.H.] when he's available." The trial judge then rendered "additional" temporary orders, awarding Holmes possession of J.H. "during the week" from Sunday evening to Friday evening and limiting Sanchez's periods of possession to weekends. The temporary orders, which continue in effect "until further order of the [c]ourt," place conditions on Sanchez's right to possession and grant Holmes the "sole discretion" to decide "whether or not the child is placed in a day care center."

Sanchez filed a petition for a writ of mandamus to challenge these temporary orders. Sanchez argues the trial court clearly abused its discretion by ignoring the standard set forth in § 156.006(b)(1) of the Texas Family Code, which provides in pertinent part:

(b) While a suit for modification is pending, the court may **not** render a temporary order that has the effect of changing the designation of the person who has the exclusive right to designate the primary residence of the child under the final order unless:

---

**2.** These modified standard possession provisions provided Holmes possession of J.H. during the week from "as early as 3:00 p.m. on the Tuesday prior to the first, third[,] and fifth Fridays of each month ending at 9:00 a.m. on the first, third[,] and fifth Fridays of each month; and from as early as 3:00 p.m. on the Thursday prior to the second and fourth Friday of each month until 9:00 a.m. the following morning."

(1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

TEX. FAM.CODE ANN. § 156.006(b)(1) (Vernon Supp.2006) (emphasis added).[3] In response, Holmes argues the trial court was not bound to follow § 156.006(b)(1) because the temporary orders do not have the effect of changing Sanchez's exclusive right to designate primary residence.

### MANDAMUS STANDARD OF REVIEW

■ Mandamus is the appropriate mechanism to challenge temporary orders made while a child custody modification suit is pending because such orders are interlocutory and not appealable. *In re Mays–Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding); *Little v. Daggett*, 858 S.W.2d 368, 369 (Tex.1993) (orig. proceeding); *In re Levay*, 179 S.W.3d 93, 95 (Tex.App.-San Antonio 2005, orig. proceeding). Generally, a writ of mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts," and "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 839. Moreover, "[a] trial court abuses its discretion if it acts in an arbitrary or unreasonable manner, without reference to any guiding rules or principles." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex.2002).

### THE EFFECT OF THE TEMPORARY ORDERS

■ Section 156.006(b) limits a trial court's authority to render temporary orders that have "the effect" of changing the person with the exclusive right to designate primary residence under a final order. TEX. FAM.CODE ANN. § 156.006(b)(1) (Vernon Supp.2006); *In re Levay*, 179 S.W.3d at 95. To determine if temporary orders effectively change the person with the exclusive right to designate primary residence, we must examine the temporary orders in relation to the final order. *In re Ostrofsky*, 112 S.W.3d 925, 929 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). This determination does not turn on the trial court's characterization of its ruling, but on the substance of the temporary orders. *See id.* (temporary order changed person with the exclusive right to determine primary residence even if it did not expressly state it). When the temporary orders "deprive[ ]" a custodial parent "of any discretion inherent in the right to determine the [child's] primary residence," they have "the effect" of changing the designation of the person with the exclusive right to designate a child's primary residence. *In re Levay*, 179 S.W.3d at 96; *In re Ostrofsky*, 112 S.W.3d at 929.

■ Holmes asserts the temporary orders give him possession of J.H. only when Sanchez is unavailable and thus do not change her exclusive right to designate primary residence. We disagree. The temporary orders grant Holmes possession of J.H. "during the week every week" "beginning at 6:00 p.m. on Sunday and ending at 6:00 p.m. on Friday" and give him the "sole discretion" to decide if J.H. will attend daycare.[4] Additionally, the tempo-

---

**3.** It is undisputed that the additional grounds for rendering such temporary orders do not apply here. TEX. FAM.CODE ANN. § 156.006(b)(2), (3) (Vernon Supp.2006).

**4.** We recognize that the temporary orders give Sanchez additional possession time at Christmas and during "periods in which [Sanchez] is not in school while [she] is enrolled in school." The latter provision appears to allow Sanchez additional possession

rary orders require the parties to exchange possession of J.H. in San Antonio. The temporary orders do not expire when Sanchez completes her training program, but instead extend indefinitely "until further order of the [c]ourt." Under the final order, Sanchez had greater possession and access to J.H. than Holmes and unrestricted authority to establish the child's primary residence anywhere. The temporary orders take away these rights. As a practical matter, Sanchez no longer has the right to take J.H. to another city and establish the child's main residence there.[5] The temporary orders provide that if Sanchez's training program requires her to remain in Houston on the weekends and J.H. cannot be brought to Houston, the child must remain in Holmes's custody. The record shows this provision was made to limit Sanchez's authority to leave J.H. in the grandparents' care.[6]

Together, the substantial reduction in Sanchez's overall possession time, the restrictions placed on her possession rights, and the indefinite duration of the temporary orders, operate to deprive Sanchez of any discretion inherent in her right to designate J.H.'s principal residence. *See In re Levay*, 179 S.W.3d at 97 (temporary orders placing child in a residential facility indefinitely deprived the custodial parent of any discretion inherent in the exclusive right to determine child's residence); *In re Ostrofsky*, 112 S.W.3d at 929 (temporary orders requiring children to attend a boarding school deprived the custodial par-

ent of any discretion inherent in the right to determine primary residence); *cf. Dalton v. Doherty*, 670 S.W.2d 422, 424 (Tex. App.-Fort Worth 1984, no writ) (order completely deprived the managing conservator of his function when it granted the possessory conservator custody of the child at all times except two weekends per month). We conclude that the temporary orders effectively change the designation of the person with the exclusive right to designate primary residence under the final order. As a result, the trial court was not authorized to render these temporary orders unless it found them to be "necessary" because the child's present circumstances would significantly impair her physical health or emotional development. *See* TEX. FAM.CODE ANN. § 156.006(b)(1) (Vernon Supp.2006).

## NECESSITY REQUIREMENT

Holmes argues that even if the temporary orders effectively change Sanchez's exclusive right to designate primary residence, mandamus should not issue because the "record is replete" with incidents showing the necessity required under the statute. Holmes does not argue, and the record does not show, that the trial court found any such necessity. The full evidentiary record is not before us; however, the limited record affirmatively shows the temporary orders were not based on any showing of necessity. When the trial judge made his ruling, he stated "based on

---

time during her school holidays, but has no application once her training program ends. Aside from these special provisions, the temporary orders essentially reverse the total possession time given to each parent under the final order.

5. To clarify this point, Sanchez's trial counsel inquired, "So, Your Honor is saying that when [Sanchez] gets out of school and takes a job, if she takes a job some place else, she

cannot take the child with her?" The trial judge responded, "On her weekends. The schedule will be on her weekends until further orders of the court."

6. When rendering this part of the temporary orders the trial judge stated: "I will tell you this, Mr. Holmes. If you want to give the [maternal] grandparents ... any time, [it's] totally up to you in your discretion."

what the evidence before the [c]ourt is, I am not going to change the designation on [the final order]." Later, he explained his ruling this way: "It's just because a parent should be there instead of a grandparent. That's why I'm doing it. It's strictly because of that." This is not a statutory ground for rendering temporary orders that effectively change the designation of the person with the exclusive right to designate a child's primary residence under a final order. *See* TEX. FAM.CODE ANN. § 156.006(b) (Vernon Supp.2006). By failing to comply with § 156.006(b), the trial court clearly abused its discretion. *See In re Levay,* 179 S.W.3d at 97 (granting mandamus relief when the trial court issued temporary orders in violation of § 156.006(b)).

### CONCLUSION

We conditionally grant the writ. The trial court is directed to vacate its temporary orders. The writ will only issue if the trial court fails to withdraw its temporary orders within ten days of the date of this opinion.