

# NUMBER 13-21-00379-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE ALEJANDRA SUAREZ

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria[1]

On November 2, 2021, relator Alejandra Suarez filed a petition for writ of mandamus seeking to compel the trial court to vacate temporary orders regarding her minor child, A.T.T.[2] *See* TEX. FAM. CODE ANN. § 156.006(b). As further discussed below, we conclude that the record fails to contain evidence that the temporary orders were

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number F-5696-19-B in the 93rd District Court of Hidalgo County, Texas, and the respondent is the Honorable Fernando G. Mancias. *See id.* R. 52.2.

necessary because A.T.T.'s present circumstances would significantly impair her physical health or emotional development. *See id.* Accordingly, we conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

This case concerns the possession and custody of minor child, A.T.T., who was approximately two years old at the time of the underlying proceedings. Suarez is A.T.T.'s mother, and real party in interest, Francisco Trevino, is her father. On July 2, 2020, the trial court ordered that all possessory exchanges of A.T.T. between Suarez and Trevino would take place at the San Juan Police Department lobby, that Trevino would have access to A.T.T. on the first, third, and fifth weekends of the month from Friday at 6:00 p.m. until Sunday at 6:00 p.m., and that Trevino would have access to A.T.T. every Wednesday from 9:00 a.m. until 6:00 p.m.

On September 17, 2021, Trevino filed a "Motion to Modify Temporary Orders." The motion references the "most recent order" in the case as having been signed on July 20, 2020; however, that order does not appear in the record. Trevino requested a modification of that order "because the child's present circumstances would significantly impair the child's physical health and/or emotional development." He further alleged that "the current order has become unworkable and inappropriate." Trevino requested the trial court to modify the current order by appointing Trevino as the sole managing conservator and Suarez as the temporary possessory conservator of the child during the pendency of the suit. Trevino supported this motion with his affidavit, in which he averred:

> I am deeply concerned and scared for my daughter. Her mother, [Suarez], behaves in a negative and erratic manner effecting [sic] the safety and welfare of my daughter.

2

At drop[-]off she opens the door and approaches so aggressively it subsequently frightens [A.T.T.] who naturally turns to run into my arms. [Suarez] will then, in a loud[,] firm voice order me to release [A.T.T.]. I do not agree with walking away from my daughter when she is scared; it would send my daughter the wrong message. If I were to walk away when my daughter is running into my arms, I believe my daughter would misunderstand what is truly happening and fear I won't be there to comfort her or develop some issues with trust and feeling secure.

[Suarez] has become more paranoid, during handoff she uses both a body camera and her phone to record, this whole situation causes more anxiety to a situation I believe my daughter is already picking up on. I believe this is becoming more and more unhealthy for my daughter.

I am also gravely concerned about the environment my daughter is being raised in when she is with her mother. [Suarez's] brother is an alcoholic, who tends to be violent due to the addiction.

She continues her attempts to cut me out of my daughter's life and has confirmed she does not care if [A.T.T.] establishes, builds[,] and maintains a close relationship with me.

On September 28, 2021, Suarez similarly filed a "Motion to Modify Temporary Orders Regarding Possession and Access; Motion to Enforce Child Support." She alleged that the July 2, 2020 temporary orders had "become unworkable and are no longer in the best interest of [A.T.T.]." She thus requested that the trial court appoint Trevino as "possessory conservator with limited access to the child, prohibiting overnight visitation." She alleged that this modification was "necessary because the child's present circumstances would significantly impair [the child's] physical health and emotional development." Suarez additionally asserted that Trevino had failed to pay her child support in the amount of $6,837.00 and requested the trial court to enforce payment of the arrearage. Suarez supported this pleading with her affidavit, which states in relevant part:

3

I fear for the safety and well-being of my daughter [A.T.T.], who is only 25 months old. While I realize that a parent[-]child relationship is important in a child's life, I don't believe it's in the best interest of my daughter to have overnight visitation with her father.

First and foremost, [Trevino] works at night and leaves [A.T.T.] with his 70-year-old mother as caregiver. I feel as her mother, I can better take care of her at nighttime. Further, [Trevino] lacks stability due to his work schedule. Since the temporary orders, [A.T.T.] has come home with a black eye, which [Trevino] claims she hit herself with the baby lotion bottle, and dried nose bleeds without any explanation. I attempt to communicate with [Trevino] as to [A.T.T.'s] well[-]being and all I get from him are nasty comments about my appearance and nothing having to do with [A.T.T.]. In addition, [Trevino] has made false accusations towards me of physical neglect to the Texas Department of Family and Protective Service, which were ruled out. At no time have I neglected my daughter, on the contrary, I'm seeking this modification in my daughter's best interest. Recently, [Trevino] dropped [A.T.T.] off barefoot and tells me that I'm buying her tennis shoes too big. [Trevino] has shown his aggressive behavior not only towards me but to the pediatrician, police officers, child custody evaluator, and the ad litem in this case. Further still, [Trevino] has failed to pay child support since April 2021. I don't understand why this Court changed the Temporary Orders allowing [Trevino] overnight possession and access.

Since the Temporary Orders were changed, [Trevino] has had the opportunity to change to the better, however, now that [A.T.T.] is two, she hides behind me when she sees [Trevino] arrive to pick her up. In addition, [Trevino] changed [A.T.T.'s] pediatrician and he refuses to tell me who he or she is. I don't even know if she's up to date with immunizations because he refuses to tell me. Finally, we also saw Mr. Edward Acosta who abruptly ended the coparenting sessions 'indefinitely' after a private conversation with [Trevino].

Because of [Trevino's] aggressive behavior, I am respectfully requesting this Court to deny [Trevino] overnight possession and access of our daughter [A.T.T.].

I fear for my daughter's physical and mental well-being while in [Trevino's] possession.

The trial court held evidentiary hearings on the foregoing motions on September 29, 2021, and October 7, 2021. On October 8, 2021, the trial court issued a ruling (1) naming Trevino as temporary joint managing conservator with the right to determine

A.T.T.'s residence, (2) naming Suarez as temporary joint managing conservator with the right to possession and access to A.T.T. in accordance with the extended standard possession order, (3) ordering no child support "at this time," and (4) ordering Trevino to pay Suarez the unpaid child support within sixty days.

This original proceeding ensued. By one issue, Suarez asserts: "In evaluating evidence presented during a hearing on temporary orders, Respondent erred by abusing its discretion and modifying the current conservatorship of A.A.T., a child, as well as possession and access for A.A.T., a child."[3] This Court requested and received a response to the petition for writ of mandamus from Trevino. Trevino asserts (1) that the order does not create a designation or change the designation of the person who has the exclusive right to designate the primary residence of the child, "or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence"; (2) given the record evidence, the trial court did not abuse its discretion in rendering its order; and (3) given the failure to request findings of fact and conclusions of law, the trial court exercised its discretion appropriately in determining the credibility of the witnesses.

## II. STANDARD OF REVIEW

"Mandamus relief is an extraordinary remedy requiring the relator to show that (1) the trial court clearly abused its discretion and (2) the relator lacks an adequate

---

[3] Suarez subsequently filed an emergency motion for temporary stay of the trial court proceedings. We ordered the motion to be carried with the case pending receipt and review of Trevino's response to the petition for writ of mandamus. We have considered this original proceeding on an expedited basis, and accordingly, given our prompt disposition of the petition for writ of mandamus, we dismiss Suarez's motion as moot.

remedy on appeal." *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36, 138 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

A trial court abuses its discretion if it reaches a decision that is so arbitrary and unreasonable as to constitute a clear and prejudicial error of law or if it fails to correctly analyze or apply the law. *See In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 839–40. When reviewing the trial court's decision for an abuse of discretion, we may not substitute our judgment for that of the trial court with respect to resolution of factual issues or matters committed to the trial court's discretion. *Walker*, 827 S.W.2d at 839. However, we are "much less deferential" when we review the trial court's determination of the legal principles controlling its ruling. *Id.* at 840.

Because a trial court's temporary orders are not appealable, mandamus is an appropriate vehicle for review. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding) (per curiam); *In re Walser*, No. 04-21-00291-CV, 2021 WL 4296048, at *1, __ S.W.3d __, __ (Tex. App.—San Antonio Sept. 22, 2021, orig. proceeding); *In re Strickland*, 358 S.W.3d at 820; *In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

### III.    TEX. FAM. CODE ANN. § 156.006

Texas Family Code § 156.006 governs temporary orders in suits for modification. *See* TEX. FAM. CODE ANN. § 156.006. This section provides, in relevant part, as follows:

> (a)    Except as provided by Subsection (b), the court may render a temporary order in a suit for modification.

6

(b)     While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and:

(1)     the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development;

. . . .

(b-1)   A person who files a motion for a temporary order authorized by Subsection (b)(1) shall execute and attach to the motion an affidavit on the person's personal knowledge or the person's belief based on representations made to the person by a person with personal knowledge that contains facts that support the allegation that the child's present circumstances would significantly impair the child's physical health or emotional development. The court shall deny the relief sought and decline to schedule a hearing on the motion unless the court determines, on the basis of the affidavit, that facts adequate to support the allegation are stated in the affidavit. If the court determines that the facts stated are adequate to support the allegation, the court shall set a time and place for the hearing.

*Id.* "Section 156.006 imposes a high burden on the movant to present evidence that a child's present circumstances are significantly impairing his or her physical health or emotional development." *In re Walser*, 2021 WL 4296048, at *2 (quoting *In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.)); *see also In re Odo*, No. 11-21-00227-CV, 2021 WL 4782976, at *2 (Tex. App.—Eastland Oct. 14, 2021, orig. proceeding) (mem. op.) (per curiam) ("The 'significant impairment' standard is a high one and requires evidence of a parent's bad acts beyond a violation of a divorce decree or attempts to alienate the child from the other parent."); *In re Morehead*, No. 06-21-00052-CV, 2021 WL 3669607, at *2 (Tex. App.—

7

Texarkana Aug. 18, 2021, orig. proceeding) (mem. op.) ("A general concern as to the child's emotional development is not enough to show a significant impairment, as required by [§] 156.006 of the Texas Family Code."); *In re Bird*, No. 03-20-00222-CV, 2020 WL 7063583, at *3 (Tex. App.—Austin Dec. 3, 2020, orig. proceeding) (mem. op.) (stating that the "significant impairment" standard is higher than the "best interest" standard). Because the "significant impairment" standard is a high one, the movant "must present evidence of bad acts or omissions committed against the children." *In re Walser*, 2021 WL 4296048, at *2. "Because each child's circumstances are different, conditions that could significantly impair the emotional development of one child may not affect another child as strongly. Thus, specific allegations as to how a child's emotional development will be significantly impaired are statutorily required." *In re Strickland*, 358 S.W.3d 818, 822–23 (Tex. App.—Fort Worth 2012, orig. proceeding).

## IV.    ANALYSIS

By one issue, Suarez alleges that the trial court abused its discretion by ordering a change in conservatorship "without a proper showing of evidence proving [that A.T.T.] was in danger, emotionally or physically."

## A.    Residence

We first address Trevino's assertion that this case does not implicate § 156.006 because the order subject to review does not create or change the designation of the person who has the exclusive right to designate the primary residence of the child and does not have the effect of creating, changing, or eliminating the geographic area within which the conservator must maintain the child's primary residence. *See* TEX. FAM. CODE ANN. § 156.006(b); *In re Sanchez*, 228 S.W.3d 214, 217–18 (Tex. App.—San Antonio

8

2007, orig. proceeding); *In re Levay*, 179 S.W.3d 93, 95 (Tex. App.—San Antonio 2005, orig. proceeding). In examining this issue, we examine the substance of the temporary orders rather than the trial court's characterization of its ruling. *See In re Davila*, 510 S.W.3d 455, 458 (Tex. App.—San Antonio 2013, orig. proceeding).

The order at issue in this case expressly states that "[Trevino] is named Temporary Joint Managing Conservator with the right to determine the residence of [A.T.T.]." By its express terms, the order creates the designation of the person with the right to designate A.T.T.'s primary residence as provided for in § 156.006(b). *See* TEX. FAM. CODE ANN. § 156.006(b). We thus disagree with Trevino's argument that the statute is inapplicable.

## B.    Findings of Fact and Conclusions of Law

Trevino next asserts, essentially, that Suarez's failure to request findings of fact and conclusions of law means that we must defer to the trial court's ruling insofar as it was based on the trial court's determination regarding the credibility of the witnesses.

When, as here, no findings of fact or conclusions of law are requested or filed, we imply all findings that are necessary to support the trial court's ruling and supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Mauldin v. Clements*, 428 S.W.3d 247, 262–63 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *In re J.C.*, 346 S.W.3d 189, 193 (Tex. App.—Houston [14th Dist.] 2011, no pet.). We bear in mind that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (quoting *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—

9

Dallas 2004, no pet.)). We defer to the trial court's judgment "in matters involving factual resolutions and any credibility determinations that may have affected those resolutions." *In re P.M.G.*, 405 S.W.3d 406, 410 (Tex. App.—Texarkana 2013, no pet.); *see George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We disagree with Trevino's assertion that Suarez's failure to request findings of fact and conclusions of law renders the trial court's ruling unassailable. Because the mandamus record includes the reporter's records and an appropriate appendix, the trial court's implied findings are not conclusive. *See BMC Software*, 83 S.W.3d at 795. Further, findings as to witness credibility must be reasonable, and a factfinder is not free to believe testimony that is conclusively negated by undisputed facts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005); *Wichita County v. Envtl. Eng'g & Geotechnics, Inc.*, 576 S.W.3d 851, 861 (Tex. App.—Austin 2019, no pet.). Accordingly, we proceed to review the record evidence in light of the statutory framework.

## C.     Best Interest and Present Circumstances

Under the family code, the trial court was required to find that the temporary order was in A.T.T.'s best interest and that the order was necessary because A.T.T.'s present circumstances would significantly impair her physical health or emotional development. *See* TEX. FAM. CODE ANN. § 156.006(b). The record includes the aforementioned affidavits and testimony from Trevino, Suarez, and child protection investigation supervisor Sharon Cantu Rodriguez.

Trevino testified that he believed that it was in A.T.T.'s best interest for her physical and mental state that he be given primary custody of her. In support of his position, he alleged, generally, that Suarez was aggressive and violent and had physically attacked

10

him; that A.T.T. appeared fearful of Suarez and did not wish to go with her when they exchanged possession; that Suarez's recording of the exchanges by body camera and cell phone appeared to frighten A.T.T.; that the parents' exchanges were volatile, involving frequent verbal and physical altercations, and thus had to occur at the police station; that Suarez's brother was a violent alcoholic who experienced frequent incidents with the police, and yet A.T.T. was allowed to be around him; and that Suarez failed to comply with court-ordered visitation.

Trevino testified he disagreed with almost all of the allegations in Suarez's affidavit. In contrast to Suarez's affidavit, Trevino testified that A.T.T. runs to him at the parent-exchanges, does not look back at Suarez, and that he has to encourage A.T.T. to communicate with her mother. He complained that Suarez's constant recording of the exchanges appeared to cause A.T.T. anxiety or concern. Trevino testified that A.T.T. does not run away from him or fear him, and Suarez's allegations to the contrary are "100 percent" false. Trevino further testified that Suarez's allegations that he leaves A.T.T. with his elderly mother during his periods of possession are false. Trevino works ten days, on average, each month, at the Emergency Department at Valley Regional Medical Center in Brownsville. He "make[s] a choice to not accept extra work because [he] want[s] to be there for [his] daughter." Trevino stated that when he has possession of A.T.T., he does not work, and he has made appropriate arrangements to ensure this routine with his management. With regard to Suarez's allegation regarding A.T.T.'s black eye, he testified that A.T.T. was holding a bottle of lotion and she accidentally dropped it on her face while he was changing her diaper. According to Trevino, he took A.T.T. to the pediatrician at the time, and the incident had happened more than a year previously. Trevino further

11

asserted, contrary to Suarez's allegations, that he had attempted to make child support payments but that Suarez refused to take his checks.

Trevino testified that Suarez's brother has a "very serious" alcohol problem and "a tendency to be violent." He stated that A.T.T. is sometimes "around that family and stays with them." He has witnessed Suarez's brother engage in physical confrontations with other individuals and with police officers. Trevino stated that before the custody battle over A.T.T., Suarez had called Trevino to "deal" with her brother "[m]any, many times." Trevino stated that Suarez's brother "was around guns when he was completely drunk," and Trevino knows "for a fact" that the brother is "around" A.T.T. Trevino conceded, however, that he was unaware of any evidence that the brother was involved in any altercation with A.T.T., or exposed her to danger, or otherwise inflicted "some sort of emotional exposure" on her. Trevino stated that he did not have evidence that Suarez's brother posed a danger to A.T.T. "[o]ther than the fact that he's an alcoholic and violent."

Trevino testified that Suarez has been aggressive and physically assaultive towards him on multiple occasions and that she "is very violent." He testified that he has filed police reports regarding some of these incidents and that Suarez's tendency for aggression was documented by Gilda Bowen, who was appointed to do the child custody evaluation for a previous case study. Trevino acknowledged that he has filed a motion requesting that Suarez submit to a psychological examination due to her "labile" moods. Trevino believes that A.T.T. is afraid of Suarez, and in support of this allegation, referenced Suarez's behavior in "aggressively" entering the police station and "loudly" ordering Trevino to give her A.T.T. Trevino further asserted that Suarez has not followed visitation orders, and she told him that "[t]here isn't a judge [who is] going to tell [her], the

mother of [her] daughter, when [she] can see [her] daughter," and Suarez stopped allowing an exchange of possession for A.T.T. He alleged that Suarez calls the police and fabricates stories about him.

Trevino testified he has never been involved with CPS, but that is "not the same case" for Suarez. According to Trevino, Suarez took possession of A.T.T. in the initial part of the custody battle and would not let him see A.T.T. for a period of forty-five days, so he called CPS for a welfare check. Rodriguez, the CPS investigation supervisor, testified that there was not sufficient evidence to conclude that Suarez had abused or neglected A.T.T., and Trevino admitted that CPS ruled out neglect with regard to that incident.

Trevino conceded that Bowen's previous case study indicated that he was aggressive and used intimidating tactics in interacting with various individuals. Trevino agreed that Bowen had recommended that he take anger management classes, and he did not do so, but countered that the trial court had not ordered him to do so. He acknowledged that under the previous temporary orders, Suarez was allowed to determine the primary residence of A.T.T. and he was denied a fifty-fifty possession order regarding A.T.T.

In contrast, Suarez testified that she does not think it is in her daughter's best interest to have overnight visitation with her father. Suarez premised this belief on Trevino's behavior in the past with herself and multiple other people, including his co-workers. "He's always aggressive, abusive, impatient, and unkind. So[,] I fear that [A.T.T.] is being treated poorly or she's being neglected." Suarez contended that Trevino was contentious and assaultive during the exchanges for A.T.T., and had kicked Suarez, "ripped" A.T.T. from her arms, and thrown her child support check on the ground. As

13

further examples of Trevino's actions, Suarez asserted that Trevino inappropriately "fired" one of A.T.T.'s pediatricians and had been asked not to return to another one. She stated that she attended parenting sessions and coparenting sessions with Trevino, but the facilitator refused to continue working with them after speaking with Trevino.

Suarez disagreed with much of Trevino's testimony. She testified that A.T.T. appears to be scared of Trevino and does not want to go with him when they exchange possession. She denied ever assaulting Trevino, and instead averred that she was merely defending herself. She asserted that she has never refused Trevino's child support checks. Suarez further denied that her brother was ever around A.T.T. Suarez additionally alleged that Trevino also recorded some of the child exchanges, even though he alleged that Suarez's engaging in this same activity caused A.T.T. concern and fear.

Finally, the parties provided the trial court with video evidence in support of their positions, although they disagreed about the interpretation and import of much of that evidence.

As a liminal matter, we note that the testimony proffered by Suarez and Trevino was largely conflicting. Under well-established rules regarding mandamus, appellate courts are not authorized to resolve factual disputes in a mandamus proceeding. *See In re Woodfill*, 470 S.W.3d 473, 478 (Tex. 2015) (orig. proceeding) (per curiam); *In re Angelini*, 186 S.W.3d 558, 560 (Tex. 2006) (orig. proceeding); *In re Perez*, 508 S.W.3d 500, 503 (Tex. App.—El Paso 2016, orig. proceeding [mand. denied]). Further, determinations regarding credibility and demeanor are issues that are reserved for the trial court on mandamus review. *In re B.B.*, 632 S.W.3d 136, 141 (Tex. App.—El Paso 2021, orig. proceeding).

14

However, in this case, none of the evidence presented, conflicting or otherwise, or dependent on a credibility assessment, is sufficient to establish that the temporary order issued is necessary because A.T.T.'s present circumstances would significantly impair her physical health or emotional development. *See* TEX. FAM. CODE ANN. § 156.006(b). Implying all necessary findings in favor of the trial court's temporary order, the evidence presented at the hearing does not rise to the level that could support the order under § 156.006(b)(1). This is so even if we deem true all of Trevino's allegations. *See Worford*, 801 S.W.2d at 109. And this is so even giving due deference to the trial court's credibility determinations and its ability to resolve conflicting evidence in Trevino's favor. *See In re B.B.*, 632 S.W.3d at 141; *In re P.M.G.*, 405 S.W.3d at 410. Put simply, there is no evidence of any serious acts or omissions that suggest that, if A.T.T. were to remain in her present circumstances, her physical health or emotional development would be significantly impaired. *See* TEX. FAM. CODE ANN. § 156.006; *In re Walser*, 2021 WL 4296048, at *3 (discussing poor housing circumstances, attempts to obtain restraining orders, inconsistent responses to attempts to communicate with children); *In re C.S.*, 264 S.W.3d 864, 874 (Tex. App.—Waco 2008, no pet.) (considering alleged emotional abuse by promoting parental alienation); *see also In re Barker*, No. 03-21-00036-CV, 2021 WL 833970, at *8 (Tex. App.—Austin Mar. 4, 2021, orig. proceeding) (mem. op.) (collecting cases regarding evidence that fails to meet the statutory standard); *In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) ("Taking as true Winfree's evidence that Charles had interfered in Winfree's visitation and communications with C.S.C., that the child frequently wore dirty, ill-fitting, or damaged clothes and shoes, and that her hair, body, and underwear

15

were frequently dirty, unkempt, and soiled, that evidence does not rise to the level of showing 'significant impairment.'"); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.) (per curiam) (considering circumstances involving an unsanitary home, lack of supervision, playing in a parking lot, and lacking a coat or sweater in freezing temperatures).

On this record, we conclude the trial court did not have sufficient evidence upon which to exercise its discretion to enter a temporary order that had the effect of creating or changing a designation "of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence." *See* TEX. FAM. CODE ANN. §156.006(b). With insufficient evidence to support any finding that A.T.T.'s present circumstances would significantly impair her physical health or emotional development, we conclude the trial court erred. We sustain Suarez's sole issue presented in this original proceeding.

## V. CONCLUSION

In conclusion, the Legislature has statutorily imposed limitations on the trial court's ability to render a temporary order in a suit for modification. *See id.* We are bound to follow the Legislature's express limitations on the trial court's ability to create or change the designation of the parent with the right to determine the child's residency to a limited set of circumstances. *See id.* Therefore, we hold that the trial court abused its discretion by rendering temporary orders designating Trevino as the parent with the right to designate A.T.T.'s residence. *See id.*

Accordingly, the Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that Suarez has met her burden to obtain mandamus relief. We conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its order of October 8, 2021, and to proceed in accordance with this opinion. Our writ will issue only if the trial court fails to comply.

NORA L. LONGORIA
Justice

Delivered and filed on the
22nd day of December, 2021.

17