# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00274-CV

## In re Kayla Tindell

## ORIGINAL PROCEEDING FROM WILLIAMSON COUNTY

## M E M O R A N D U M   O P I N I O N

Relator Kayla Tindell has filed a petition for writ of mandamus asking this Court to compel the trial court to vacate its temporary orders in the underlying suit affecting the parent-child relationship. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52.1. We will conditionally grant in part the petition for writ of mandamus because we conclude that the trial court abused its discretion by rendering temporary orders that changed the agreed order's designation of Tindell as the parent with the exclusive right to determine the primary residence of the child. *See* Tex. R. App. P. 52.8(c); *see also* Tex. Fam. Code § 156.006(b)(1) (prohibiting trial court from rendering temporary orders that change person designated as having exclusive right to designate child's primary residence unless temporary order is in child's best interest and "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development").

## BACKGROUND[1]

This mandamus proceeding arises out of a petition to modify the parent-child relationship filed by real party in interest Zachary Ramirez on September 22, 2017. Ramirez sought to modify the parties' prior agreed order in the suit affecting the parent-child relationship, which was signed January 30, 2017, by the Williamson County District Court. The agreed order named Tindell and Ramirez as joint managing conservators of their son RHT, who was a little over two years old at the time of the proceeding that resulted in this mandamus. The agreed order gave Tindell the exclusive right to designate the child's primary residence "within 250 miles of Zachary Ramirez's current residence located at . . . Rowlett, Texas 75088." The agreed order also set out a custom possession order that allowed the parents to have possession at mutually agreed times, or in the absence of mutual agreement, the custom schedule gave Ramirez visitation with the child on the first, third, and fifth weekends of the month from 6:00 p.m. Friday until 6:00 p.m. on Sunday. At all other times, the schedule provided for the child to be with Tindell, who had been the child's primary caregiver since his birth. In the September 2017 petition to modify, Ramirez requested that the trial court appoint him to be the person who has the right to designate the primary residence of the child, and he requested modification of the possession order but did not specify a requested schedule.

Ramirez's initial September 2017 petition did not contain an affidavit or a request for temporary orders. *See* Tex. Fam. Code § 156.006(b-1) (requiring person who files motion for

---

[1] Unless otherwise noted, the facts in this section are undisputed and derived from the pleadings and the testimony and other evidence presented at the hearing on temporary orders.

2

temporary order under Subsection(b)(1) to attach affidavit on person's "personal knowledge or the person's belief based on representations made to the person by a person with personal knowledge" that contains facts supporting person's allegation that child's present circumstances would significantly impair child's physical health or emotional development). On November 20, 2017, Ramirez filed an amended petition that included a request for temporary orders and an affidavit. As the basis for the "extraordinary relief" requested in his petition, Ramirez asserted that Tindell had engaged in the conduct alleged in his affidavit. Ramirez alleged in the affidavit that "[i]n the last year [he has] had serious concerns for [Tindell's] behavior and decisions" and that he believed "her actions are harmful and unsafe" for their child. His specific allegations included Tindell's "unstable lifestyle" involving an alleged ten moves with the child between family members' homes and the homes of various friends and boyfriends, her lack of a car or a job, her current pregnancy, and his belief that she was not taking her prescribed medications. In his petition, in addition to requesting that he be appointed the person with the right to designate the child's residence, Ramirez requested that Tindell be denied access to the child, or alternatively, that her visitation with the child be supervised.

The trial court first orally granted Ramirez's request for temporary orders at a default hearing on December 18, 2017. Although Ramirez tendered evidence that Tindell had been served on December 8, 2017, Tindell did not appear. Ramirez testified that he was concerned about the child's health and safety because Tindell "moves around all the time with these questionable guys" and had lived in at least ten residences in the past year. He also testified that Tindell told him she drank and smoked marijuana on the weekends that she did not have the child. The only testimony

3

directly related to the child was Ramirez's statement that one of the "questionable guys" had "abused" Tindell in front of the child, but he did not provide any details about that event. Ramirez also testified that as far as he knew Tindell did not currently have a permanent place to stay with the child. Ramirez did not testify about the child's physical health or emotional development. After hearing Ramirez's testimony, the trial court orally ruled without referring to the Section 156.006 standard for temporary orders. The trial court changed the agreed order's designation of Tindell as the person with the exclusive right to designate the primary residence of the child and appointed Ramirez as the person with that right instead. In addition, the trial court ordered that Tindell's visitation with the child was limited to supervised visits of two hours on the first, third, and fifth weekends of each month.

On January 19, 2018, the trial court conducted a hearing on Tindell's motion to set aside default judgment. After denying the motion to set aside the default judgment, the trial court ruled that "the temporary orders stand based on what was presented in the affidavit, along with the default testimony, and that the default stands." At the same hearing, after making that ruling, the trial court stated that there were some outstanding issues that it wanted to make determinations about, and accordingly, the court proceeded to hear additional evidence related to the temporary orders.[2]

---

[2] In his mandamus response, Ramirez points out that there was a prior hearing on the motion to set aside the trial court's default judgment on January 5, 2018, but he complains that Tindell failed to include her motion to set aside the default, her original answer to the petition to modify, or the transcript of the January 5, 2018 hearing in the mandamus record in violation of Texas Rule of Appellate Procedure 52.7. Tindell responds that she did not include the motion to set aside the default judgment or the January 5 hearing transcript because the focus of that hearing was whether she had received proper service and notification of the December 18 hearing, an issue that is not

4

During this hearing, the trial court heard conflicting testimony concerning Ramirez's allegations about Tindell's lifestyle and the child's present circumstances. At the time of this hearing, Tindell was living with her mother. At the conclusion of the hearing, the trial court again ruled without referring to the Section 156.006 standard for temporary orders, leaving in place the portion of the temporary orders designating Ramirez as the person with the right to designate the child's primary residence, but ordering that the child's primary residence remain Ramirez's parents' home and ordering that Ramirez was not permitted to move the child's primary residence from that home. In addition, the trial court ordered that Tindell's visitation with the child was limited to supervised visits on the first, third, and fifth Saturdays of each month.

The trial court also confirmed that Ramirez should draft the temporary orders and provide them to Tindell for her review and that the parties should appear on the previously set date of February 22, 2018, for a review hearing and a hearing on the entry of the orders. Ramirez complains in his mandamus response that Tindell failed to include a transcript from these hearings. The docket sheet reflects that the review hearing was set for one hour and the motion for entry of orders was set for fifteen minutes. Ramirez attached to his response an affidavit from the attorney

---

presented in this mandamus. We agree with Tindell that she is not required to submit documents or transcripts that do not pertain to the issues raised in her mandamus. Rule 52.7 requires the relator to file with the petition "(1) a certified or sworn copy of every document that is *material* to the relator's claim for relief and that was filed in any underlying proceeding; and (2) a properly authenticated transcript of *any relevant testimony* from any underlying proceeding, including any exhibits offered in evidence, or a statement that no testimony was adduced in connection with the matter complained." Tex. R. App. P. 52.7(a) (Emphases added.) As for Tindell's answer to the petition to modify, Ramirez does not explain what material information it contains that is absent from the record. Moreover, Rule 52.7(b) allows supplementation of the record by any party to the proceeding. *See id.* R. 52.7(b).

who represented him at the hearings. The attorney attested that he appeared at both the January 5 and February 22 hearings as counsel for Ramirez. He further attested, "At both hearings, I believe the trial court heard testimony relating to Zachary Ramirez's request for temporary orders, on which the original mandamus proceeding is based." Tindell responds that the trial court did not take evidence on the issue of whether the primary conservator should be changed at the February 22, 2018 hearing.[3] We note that while the trial court indicated that it wanted "to get as much information as I possibly can by the February 22nd date when I do the review hearing so that way I can revisit the possession and access schedule and whether or not that changes," the court did not indicate it would be revisiting the issue of who was the person with the right to designate the child's primary residence. Furthermore, we note that the temporary orders state that they are based on the December 18, 2017 and January 19, 2018 hearings and do not mention a February 22, 2018 hearing. While we acknowledge that it is relator's burden under Rule 52.7 to file a complete mandamus record, without more specific information indicating that the trial court heard evidence on February 22 that was material and relevant to its decision to designate Ramirez as the person with the right to designate the child's primary residence, we decline to deny Tindell's mandamus for failure to provide a complete mandamus record. *See In re Lowery*, No. 05-14-01401-CV, 2014 WL 5862199, at *1 (Tex. App.—Dallas Nov. 13, 2014, orig. proceeding) (mem. op.) (holding that "[i]n cases in which the trial court has received evidence at the hearing giving rise to a mandamus challenge, as

---

[3] As previously noted, Tindell asserts that the focus of the January 5, 2018 hearing was whether she received proper service and notification of the December 18, 2017 hearing, which is not at issue in this mandamus proceeding.

6

in this case, the party seeking mandamus has an obligation to provide transcripts of any relevant evidentiary hearings").

The trial court signed the temporary orders on February 22, 2018. Tindell filed her mandamus with this Court on April 20, 2018.

## ANALYSIS

In two issues, Tindell complains that the trial court abused its discretion by (1) holding a temporary orders hearing based on Ramirez's affidavit attached to his amended petition to modify and (2) issuing temporary orders that changed the agreed order's designation of Tindell as the conservator with the exclusive right to designate the primary residence of the child in violation of Texas Family Code Section 156.006(b). The second issue is dispositive of the case, so we limit our analysis to that issue. *See* Tex. R. App. P. 47.1.

### Standard of review

A writ of mandamus will issue to correct a clear abuse of a trial court's discretion when the party has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)); *In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *1 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.). Mandamus is an appropriate vehicle for challenging a trial court's temporary orders because these orders are not appealable. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding) (per curiam); *In re Coker*,

7

No. 03-17-00862-CV, 2018 WL 700033, at *3 (Tex. App.—Austin Jan. 23, 2018, orig. proceeding) (mem. op.).

**Temporary orders changing conservator with exclusive right to designate residence**

In her second issue, Tindell contends that the trial court abused its discretion by entering temporary orders that changed the agreed order's designation of the conservator with the exclusive right to designate the child's residence from her to Ramirez. *See* Tex. Fam. Code § 156.006(b). Tindell asserts that the trial court failed to make any finding that the child's present circumstances would significantly impair his physical health or emotional development before changing the designation and that the record does not contain evidence of serious acts or omissions from which this Court may imply the necessary findings. *See In re Serio*, 2014 WL 7458735, at *2. In response, Ramirez contends that the trial court was not required to make an explicit finding that the child's present circumstances would significantly impair his physical health or emotional development and that the record contains evidence from which we may imply the necessary findings that the child's present circumstances would significantly impair his physical health or emotional development.

Under Section 156.006, the trial court "may not render a temporary order" that changes which parent has the exclusive right to designate the primary residence of the child unless the temporary order is in the child's best interest, and relevant here, "the order is necessary because *the child's present circumstances would significantly impair the child's physical health or emotional development*." Tex. Fam. Code § 156.006(b) (emphasis added). The trial court's temporary orders do not expressly refer to Section 156.006(b), and the trial court made no explicit findings that the

8

child's present circumstances would significantly impair his physical health or emotional development. The orders state only that they "are for the safety and welfare and in the best interest of [the child]." Furthermore, the trial court made no reference to the standard when orally ruling at the January 19 hearing that the default temporary orders changing the designation remained in place. Accordingly, implying all necessary findings in favor of the trial court's temporary orders, we will consider whether the evidence presented at the hearings rises to the level required to support the order under Section 156.006(b)(1). *See In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.).

"Texas courts have recognized that the 'significant impairment' standard in [S]ection 156.006(b)(1) is a high one." *In re Serio*, 2014 WL 7458735, at *1. The standard requires the movant to present "evidence of relator's serious acts or omissions from which we may imply the necessary finding" that, in his present circumstances, the child's physical health or emotional development would be significantly impaired. *Id.* at *2. The evidence of serious acts or omissions committed against the child must be "more grave than violation of a divorce decree or alienation of a child from a parent." *Id.*; *see also In re Eddins*, No. 05-16-01451-CV, 2017 WL 2443138, at *4 (Tex. App.—Dallas June 5, 2017, orig. proceeding) (mem. op.) ("To establish 'significant impairment' of the children's physical health or emotional development, the movant must present evidence of bad acts or omissions committed against the children.").

Moreover, the Section 156.006(b) standard requires evidence of the child's present circumstances and that those circumstances will significantly impair his physical or emotional development. *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston

9

[14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.) (per curiam) (holding evidence of conditions in mother's prior home and of father's concern about mother's lack of support if her relationship with current boyfriend did not last was not evidence of child's present circumstances). The Texas Supreme Court, when interpreting similar language in another provision of the Family Code, held that to prove significant impairment by a preponderance of the evidence, the moving party must "offer evidence of specific actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990) (interpreting prior version of Section 156.102, which allowed appointment of nonparent as managing conservator only if "the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development"); *see also In re Ostrofsky*, 112 S.W.3d 925, 930 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (analyzing *Lewelling* and other cases interpreting similar language when interpreting Section 156.006 and concluding that Section 156.006 requires evidence of serious acts and omissions by nonmovant parent that would result in significant impairment). In particular, when considering allegations related to a child's emotional development, courts have found that evidence of emotional distress and conjecture about what may happen in the future do not amount to evidence of significant impairment by the child's current circumstances, as required by the statute. *See, e.g.*, *In re Clayborn*, No. 02-12-00299-CV, 2012 WL 3631243, at *3 (Tex. App.—Fort Worth Aug. 24, 2012, orig. proceeding) (mem. op.) (per curiam).

This Court has addressed the Section 156.006(b) standard in a few recent cases. In *In re Serio*, the Court found that although the trial court ruled that Serio had engaged in behavior designed to alienate the children from the father and prevent them from having an ongoing relationship with him, the record did not contain evidence of serious acts or omissions sufficient to imply findings that the children's emotional development, in their present circumstances, would be significantly impaired. 2014 WL 7458735, at *1–2. Similarly, in *In re Charles*, we determined that the evidence presented at the hearing regarding the mother's interference with the father's visitation and communications with the child, the child's hygiene, and a "bad case of scabies," which allegedly occurred about eight months before the modification petition was filed, did not rise to the level of showing "significant impairment." 2017 WL 5985524, at *4. In *In re Coker*, we concluded that the allegations of limiting communications and an inconsistent schedule for the children "at best support[ed] implied findings that Coker sought to alienate the children from their father or that she occasionally did not properly supervise the children, which would not be sufficient to satisfy the standard." 2018 WL 700033, at *5. Likewise, the children's desire not to move, the distance of the new home from the father, and an adult sibling's testimony that it was important for the children to be near their siblings did not rise to the level of evidence of bad acts more grave than a violation of the divorce decree or alienation of the children from their parents. *Id.* at *6. Most recently, in *In re Rusch*, in addition to concluding that the allegations concerning the children's hygiene and dental care, the mother's supervision of the children, and the size of the home "did not rise to the level of serious acts or omissions from which we may imply the necessary findings that the children's present circumstances would significantly impair their physical health or emotional development," we

determined that the general concern expressed by the father and the trial court about the impact of the mother's recent marriage and the addition of four new step-siblings on the children's emotional development was not enough to show significant impairment. *In re Rusch*, No. 03-18-00163-CV, 2018 WL 2123384, at *7 (Tex. App.—Austin May 9, 2018, orig. proceeding) (mem. op.).

In this case, much of the evidence was focused on Tindell's conduct over the past year and the past conduct of her boyfriends, rather than the child's present circumstances. Tindell testified that the child support she receives from Ramirez, a graduate student who works part-time at a deli and is currently living with his parents, is not enough to enable her to pay for a car or child care, which makes it difficult for her to maintain employment. At the time of the hearing, Tindell had moved in with Tindell's mother, who lives in a three-bedroom, two-bathroom house. Tindell testified that her mother and she have agreed that she will stay with her mother until she has enough money for her own apartment. Tindell testified that her son has his own room there set up with his toys and clothes and that she and her mother clean daily. While she acknowledged that she and her mother have had a rocky relationship in the past, she testified that her mother loves her and the child "more than anything in this world," and she would never put the child in harm's way and has never physically hurt Tindell or the child. The only conflicting evidence offered by Ramirez was his testimony that Tindell told him that her mother "drinks a lot." However, he did not testify to any personal knowledge of her drinking or of her drinking around the child. Ramirez's mother testified that the child would not be in danger at Tindell's mother's house.

Ramirez argues that the record reflects that Tindell "repeatedly lived with physically abusive men, used drugs and alcohol, and exposed [the child to] violence, alcohol, and drug-abuse."

12

There was no evidence that anyone ever physically abused the child. The only allegation of physical abuse in front of the child was Ramirez's assertion that one of Tindell's boyfriends hit her once when she was driving with the child in the car. Both Tindell and Ramirez also testified that Tindell and the child immediately left a living situation because a friend was using marijuana while the child was in the house. There was no evidence presented that Tindell ever used drugs or alcohol in front of the child. There was no evidence presented of any incident involving the child that resulted in either CPS or the police being called. There was no specific evidence presented that the child was or would be impaired physically or emotionally by any of Tindell's alleged actions or omissions.

Ramirez also argues that the evidence shows that Tindell had untreated mental disorders, that she had recently told Ramirez that she had suicidal ideations, and that she struggled with parenting. Ramirez admitted that he had no personal knowledge of what medications a doctor had recommended that Tindell take. Tindell, who was pregnant at the time of the hearing, testified that although she cannot take bipolar medication while pregnant, after conferring with her doctor, she is taking antidepressants because her bipolar disorder is bipolar depression. While there was evidence presented that she texted Ramirez in October 2017 that she "almost walked away from this life" after she found out a former boyfriend had committed suicide, there was no evidence presented that she attempted suicide or continued to have suicidal thoughts. And while Ramirez's mother testified that Tindell had told her "that it was hard being a single mom" and would sometimes call her crying, "saying that she couldn't do it anymore, that she wasn't being a good mom to [the child] and she needed me to watch him more," asking for help from a grandparent, on this record, is not evidence of an act or omission from which we can imply that a child's physical health or emotional

13

development would be significantly impaired. As noted above, Tindell testified that she is unable to afford child care, which makes it difficult to maintain employment. She also testified that unlike Ramirez's mother, who is retired, her mother works and so is not available to watch the child as much as Ramirez's mother is.

Ramirez included no allegations in his affidavit about any issues with the child's physical health. There was no evidence at the December 18 hearing and very little evidence presented at the January 19 hearing concerning the child's physical health. There was no evidence presented of any physical neglect of the child. When asked at the January hearing why he believed the child was developmentally delayed, Ramirez stated that "[h]e's—like mentally, like he's fine with letters and numbers, but he—I believe he's malnourished and he's underweight." However, his concern had not risen to the level of taking the child to a doctor. Ramirez's mother, who testified that she had often kept the child on Tindell's request, also gave very limited testimony about the child's development. When asked whether she thought the child's development might be delayed a little bit, she testified that "[h]e's a smart boy," but that he used to love the vacuum cleaner, and then one time when she turned it on, he was terrified of it. We conclude that this does not rise to the level of sufficient evidence of specific actions or omissions by Tindell that would result in significant impairment of the child's physical health. *See Lewelling*, 796 S.W.2d at 165–66 (finding no evidence of significant impairment of child's physical health or emotional development when mother had been victim of spousal abuse, was unemployed, was living in crowded conditions, and had voluntarily committed herself to hospital).

Most of the testimony at the hearings concerned Ramirez's allegations that Tindell leads an "unstable lifestyle." Although Ramirez alleged he was concerned about the potential for emotional harm to the child because Tindell had moved around with the child multiple times over the past year and had three different boyfriends, there was no evidence of actual acts or omissions by Tindell that resulted or would result in significant impairment of the child's emotional development. Ramirez's mother testified that Tindell and the child have a good bond and they love each other. Likewise, one of Tindell's male roommates testified that Tindell and the child have a strong bond and that Tindell is a good mother. And Ramirez acknowledged that several of Tindell's moves were moving in with her own mother or with Ramirez and his parents.

The temporary orders state that the trial court's ruling was based on the "best interest" of the child. While much of the testimony concerning Tindell's boyfriends and her frequent moves is certainly relevant to the child's best interest, "Section 156.006 requires more." *In re Ostrofsky*, 112 S.W.3d at 929. General concern is not enough to show significant impairment. *In re Rusch*, 2018 WL 2123384, at *7. "Because each child's circumstances are different, conditions that could significantly impair the emotional development of one child may not affect another child as strongly." *In re Strickland*, 358 S.W.3d 818, 822–23 (Tex. App.—Fort Worth 2012, orig. proceeding); *see also In re Clayborn*, 2012 WL 3631243, at *3 (concluding that father's testimony that he believed daughter needs counseling to deal with divorce and custody proceedings, absent evidence of any specific harm, was evidence of emotional distress but not significant impairment by current circumstances). There are no allegations or evidence in the record about the specific impact of Tindell's moves or romantic relationships on the child's emotional development. *See In re*

15

*Rather*, 2011 WL 6141677, at *2 ("There was no evidence that the move has had a negative impact on the child or his emotional development."); *Graves v. Graves*, 916 S.W.2d 65, 69 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding affidavit insufficient to satisfy requirements of similar standard in Section 156.102 because affidavit did not state whether mother's boyfriend's existence detrimentally affects child).

On this record, and considering the high standard required at a temporary-orders proceeding to change the parent with the right to designate the primary residence, we conclude that the record contains neither explicit findings of significant impairment nor sufficient evidence from which we may imply a finding that the child's present circumstances at the time of the relevant hearings would significantly impair his physical health or emotional development. *See* Tex. Fam. Code § 156.006(b); *In re Serio*, 2014 WL 7458735, at *2 (holding record did not "contain evidence of relator's serious acts or omissions from which we may imply the necessary findings that the children's emotional development, in their present circumstances, would be significantly impaired"). We recognize that this is a close case because of Tindell's acts and that the child presumably has been living with Ramirez in his parents' home since December; nevertheless, we are bound by the Legislature's express limitation of a trial court's ability to change the parent with the right to determine the child's residency to a limited set of circumstances. *See In re Rather*, 2011 WL 6141677, at *2. Therefore, we hold that the trial court abused its discretion by rendering temporary orders designating Ramirez as the parent with the exclusive right to designate the child's primary residence. *See* Tex. Fam. Code § 156.006(b); *see also, e.g.*, *In re Coker*, 2018 WL 700033, at *6.

16

**CONCLUSION**

Having determined that the trial court abused its discretion by changing the designation of Tindell as the parent with the exclusive right to designate the primary residence in its temporary orders, we conditionally grant in part the petition for writ of mandamus. We direct the trial court to vacate that portion of the February 22, 2018 temporary orders designating Ramirez as the parent with the exclusive right to designate the child's primary residence and changing the possession schedule from the January 30, 2017 agreed order. The writ will issue only if the court does not comply with this opinion.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Filed: July 12, 2018

17