In re Sara OSTROFSKY, Relator.

No. 14–03–00687–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 12, 2003.

Earle S. Lilly, Lynn S. Kuriger, and Steven H. Schweitzer, for relators.

Patricia A. Wicoff, Houston, Richard R. Orsinger, San Antonio, for respondents.

Panel consists of Justices ANDERSON, SEYMORE, and GUZMAN.

## OPINION

CHARLES W. SEYMORE, Justice.

In this original proceeding, relator, Sara Ostrofsky, seeks a writ of mandamus ordering the respondent, the Honorable Annette Galik, to vacate her order signed on May 6, 2003. We conditionally grant the writ.

### Background

Sara and Marc Ostrofsky were divorced on May 6, 2002. Under the decree of divorce, relator and Marc were appointed joint managing conservators of the three minor children, and relator was granted certain exclusive rights, including the right to make educational decisions and to determine the children's primary residence. Marc was granted possession of the children on the second, fourth, and fifth weekends, on Wednesday evenings for two hours, for alternating holidays, and for half the summer.

On October 8, 2002, relator filed a petition to modify the decree, seeking temporary orders prohibiting Marc from contact with relator, and requesting a temporary restraining order and temporary injunction. In relator's affidavit attached to her petition, she recounts an incident which occurred in early October 2002. Relator described verbal harassment from Marc and a confrontation followed by assault

charges [1] filed against relator. Relator also recounted alleged statements by Marc to the children threatening discontinuation of his periods of possession as a disciplinary tactic. Some of Marc's emails to the children were attached to relator's affidavit.

The court signed a temporary restraining order. Mutual temporary injunctions were signed on November 4, 2002. On November 7, 2002, Marc responded to relator's petition by filing an original answer and a counter-petition, in which he requested that the court modify his periods of possession and the parties' rights and duties.

The parties engaged in a settlement meeting, and reached agreements which were approved by the children's therapist, Dr. Kit Harrison, and Marc's therapist, Dr. Reitman. Relator prepared an order, but it was not signed by Marc. Relator then filed a motion for temporary orders, requesting a hearing.

On February 27, 2003, relator filed an emergency motion for termination of Marc's access to the children or for supervised access, based on an incident outlined in an attached affidavit. Relator asserted that Marc yelled at her during one of the children's basketball games, and kicked her in the chest.[2] On March 5, 2003, the trial court signed an emergency order, prohibiting relator and Marc from coming within 100 yards of each other and prohibiting Marc's access to the children until further order of the court, with any contact to be conducted in the presence of Dr. Harrison. Relator subsequently filed an application for protective order.

On March 21, 2003, the trial court signed a temporary ex parte protective order and an order setting a hearing for April 14, 2003. A few days before the hearing, Marc filed an application for protective order and motion for temporary orders. On April 11, 2003, the three children filed a petition in intervention through their attorney.[3] Marc filed a motion to strike the intervention, which the trial court denied.

The trial court held a three-day evidentiary hearing on all of the petitions and motions. Both parties presented testimony and the trial judge interviewed the minor children in chambers. On May 6, 2003, the trial judge signed a temporary order in which she denied the applications for protective orders filed by both parties. The trial judge appointed Dr. Kit Harrison to conduct psychological evaluations of the children and parents, modified the decree to require no contact between the parents at visitation pick-up and drop-off times, and added other procedures intended to reduce contact between the parents. The ruling most pertinent to this proceeding is the trial court's order that the children attend boarding school commencing with the 2003–2004 school year.

## Entitlement to Seek Mandamus Relief

Relator raises three arguments in this proceeding. First, she argues the trial court abused its discretion by failing to apply the requirements in section 156.006 of the Texas Family Code. Second, she claims the May 6, 2003 order violates her fundamental right under the Constitution to make decisions concerning the care, custody and control of her children. Finally,

1. The record reveals that, during this incident, relator kicked Marc in the shins.

2. The record includes conflicting testimony regarding Marc's actions at the basketball game. Relator and her father testified that Marc kicked relator; Marc and his family testified that Marc only kicked a videocamera.

3. The children are represented by an attorney hired by relator.

relator asserts the trial court exercised a power it did not possess when it ordered the children to attend boarding school because the trial court has no authority to make a placement outside the home unless a suit is brought by a governmental entity under Chapter 262 of the Family Code.

Mandamus relief is available if the trial court abuses its discretion, either in resolving factual issues or in determining legal principles, and there is no other adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). When alleging that a trial court abused its discretion in its resolution of factual issues, the party must show the trial court could have reasonably reached only one decision. *Id.* at 918. As to determination of legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *See Walker*, 827 S.W.2d at 840.

■■■ In determining whether the writ should issue, we must further determine whether the party has an adequate remedy by appeal. *Id.* Mandamus is intended to be an extraordinary remedy, only available in limited circumstances "involving manifest and urgent necessity and not for grievances that may be addressed by other remedies." *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex.1989). An appellate remedy is not inadequate merely because the party may incur more expense and delay than in obtaining a writ. *Walker*, 827 S.W.2d at 842. Temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are interlocutory and there is no statutory provision for appeal of these orders. *See Dancy v. Daggett*,

815 S.W.2d 548, 548 (Tex.1991); *In re Lemons*, 47 S.W.3d 202, 203–04 (Tex.App.-Beaumont 2001, orig. proceeding). Because the order of May 6, 2003, is a temporary order entered during the pendency of petitions to modify filed by both parties, we find relator has no adequate remedy by appeal.

## Application of Tex. Fam.Code § 156.006

Relator first claims the trial court's order effectively changed the designation of relator's exclusive right to determine the primary residence of the children in violation of the requirements of section 156.006. Section 156.006 states:

> While a suit for modification is pending, the court may not render a temporary order that has the effect of changing the designation of the person who has the exclusive right to determine the primary residence of the child under the final order unless
>
> (1) the order is necessary because the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development;
>
> (2) the person designated in the final order has voluntarily relinquished the primary care and possession of the child for more than six months and the temporary order is in the best interest of the child; or
>
> (3) the child is 12 years of age or older and has filed with the court in writing the name of the person who is the child's preference to have the exclusive right to determine the primary residence of the child and the temporary order designating that person is in the best interest of the child.

Tex. Fam.Code Ann. § 156.006(b) (Vernon 2002). Subsections (2) and (3) are not applicable here. Accordingly, the only issue is whether the trial court's order falls

under this statute and, if so, whether any evidence supports the trial court's order based on the requirements of subsection (1).

**(1) Is the May 6, 2003, order a temporary order that effectively deprives relator of the right to determine the children's primary residence?**

■ This order is a temporary order, entered during the pendency of relator's petition to modify and Marc's counter-petition to modify. Accordingly, the statute applies to this order. Next, we must determine whether the order has the effect of changing the designation of the person who has the exclusive right to determine the primary residence of the child under the final order.

In the Decree of Divorce, relator was granted the exclusive right to establish the children's primary residence. Thus, the children resided with relator at all times except during the periods designated for Marc's possession.

In the temporary order, the trial court does not specifically state that it is changing relator's exclusive rights; however, the following language is included: "until the parties, MARC OSTROFSKY and SARA OSTROFSKY, have undergone a full psychological evaluation and concluded counseling as ordered, that it is not in the best interest of these children to live with either parent." The order further provides that the children "shall attend a boarding school commencing with the 2003–2003 academic semester and shall remain in that boarding school or any subsequent school approved by this court until further order of the Court."

Although the trial court states in its order that there shall be no change in Marc's periods of possession, relator is deprived of all possession other than certain holidays. Because the order requires the children to leave relator's residence and live at boarding school, we find the temporary order deprives relator of any discretion inherent in the right to determine the children's primary residence. Thus, we hold that the temporary order effectively deprives relator of the right to determine the children's primary residence.

■ Marc claims that relator acquiesced to the possibility of the children attending boarding school. We disagree. Marc's attorney asked relator during the hearing whether "her position that [she] would do anything to help these children include[d] agreeing that these children go to boarding school?" Relator answered, "If that will be for the benefit of the children, that will be hopefully the last resort." We do not find this answer to constitute agreement or acquiescence to deprivation of her right to determine the children's primary residence.

**(2) Was the order necessary because the children's living environment may endanger the children's physical health or significantly impair their emotional development?**

■ Although the order states that its ruling is based on the "best interest of the children," section 156.006 requires more. It requires a finding that "the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development." TEX. FAM.CODE ANN. § 156.006(b)(1) (Vernon 2002). Thus, the trial court was required to find that the children's living environment with relator may "endanger their physical health or significantly impair their emotional development." The supreme court has held that the term " 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment...." *Tex. Dept. of Human Servs. v. Boyd,* 727

S.W.2d 531, 533 (Tex.1987). The endangering conduct need not be directed at the child and the child need not have actually suffered injury. *Id.*

Although it has no precedential value, an unpublished opinion from the San Antonio Court of Appeals (and presently the only case interpreting the current version of the statute) is enlightening. In that case, the divorce decree named Sondra Escamilla as the person with the exclusive right to determine the primary residence of the children. *In re Escamilla,* 2002 WL 1022945 (Tex.App.-San Antonio, 2002, orig. proceeding)(not designated for publication). The ex-husband, Francisco, filed a petition to modify this provision. *Id.* at *1. After an evidentiary hearing, the trial judge signed a temporary order giving Francisco the exclusive right to determine the children's primary residence and found that the order was made "for the safety and welfare of the children" and was "in the best interest of the children." *Id.* Sondra sought mandamus relief. The San Antonio court found Sondra had no adequate remedy by appeal and reviewed the evidence, finding that, even if the court discredited Sondra's testimony, there was no evidence that living with Sondra might endanger the children's physical health or significantly impair the children's emotional development. *Id.* at *2–3. The evidence showed that Sondra did not check for completion of school assignments, the children and their clothes were dirty upon return from visitation with Sondra, Sondra did not visit the children at school, her apartment was too small, the children were delivered to school with uncombed dirty hair, Sondra did not outfit the daughter with a training bra, Sondra sent the children to school with dirty clothes, and Sondra exposed the children to inappropriate music. *Id.* The court found this evidence to be, at most, "evidence that children are children; and Francisco's child-rearing

methods and preferences differ from his ex-wife's." *Id.* There was also an allegation of Sondra not paying proper attention to the children's medical needs, but the undisputed testimony did not bear that out. *Id.* Finding no evidence establishing that a temporary order changing the designation of the person with the exclusive right to determine the children's primary residence was necessary to ensure their physical and emotional health and development, the court found an abuse of discretion and granted mandamus relief. *Id.* at *2–3.

Another section of the Family Code has language very similar to that in section 156.006. Former section 156.203 provided for replacement of a joint managing conservatorship with a sole managing conservatorship if "the child's present living environment may endanger the child's physical health or significantly impair the child's emotional development ... and ... the appointment of a sole managing conservator would be a positive improvement for and in the best interest of the child." Act of June 16, 2001, 77th Leg., R.S., ch. 1289, 2001 Tex. Gen. Laws 3108 (current version at TEX. FAM.CODE ANN. § 156.102 (Vernon 2002)). The current version of this statute, section 156.102, allows modification of the exclusive right to determine primary residence of the child if there is proof that "the child's present environment may endanger the child's physical health or significantly impair the child's emotional development." TEX. FAM.CODE ANN. § 156.102(a)-(b)(1) (Vernon 2002). Because the requirements of these statutes contain similar language to the provisions of section 156.006, we may look for guidance in cases interpreting this language.

In *Lewelling v. Lewelling,* 796 S.W.2d 164 (Tex.1990), the supreme court held that, under a prior version of section 156.102, there must be evidence of "specif-

ic actions or omissions of the parent that demonstrate an award of custody to the parent would result in physical or emotional harm to the child." The court found no evidence of significant impairment of the child's physical health or emotional development where the mother had been a victim of spousal abuse, was unemployed, was living in crowded conditions, and had voluntarily committed herself to a hospital. *Id.* at 165–66. Other courts construing this same language found significant impairment to the child's physical health or emotional development only upon evidence of serious acts or omissions by the parent. *See In re K.R.P.,* 80 S.W.3d 669, 676 (Tex. App.-Houston [1st Dist.] 2002, pet. denied)(upholding trial court finding of significant impairment where the father had been convicted of several crimes before and after the child's birth, had assaulted the child's mother, had abused alcohol, smoked in the house despite knowing of the child's asthma and allergies, and showed little interest in the child's school and extracurricular activities); *In re S.W.H.,* 72 S.W.3d 772, 778 (Tex.App.-Fort Worth 2002, no pet.)(reversing finding of significant impairment of child's physical health or emotional development based on evidence mother had overcome severe drug addiction, despite her prior incarceration for drug use and living with boyfriend who drank alcohol on a daily basis, because no evidence showed child would be harmed by current conditions); *In re A.P.S.,* 54 S.W.3d 493, 496–97 (Tex.App.-Texarkana 2001, no pet.)(upholding finding of significant impairment despite contradictory evidence that mother physically abused children, threatened to kill herself, could not hold a job, failed to seek proper medical attention for the children, and used alcohol); *In re R.D.Y.,* 51 S.W.3d 314, 321 (Tex.App.-Houston [1st Dist.] 2001)(upheld finding of detriment to child's physical health or emotional development where ev-idence showed CPS had reported physical abuse of child, child was left alone at a church, dirty and hungry, child was afraid of mother who had attacked him with a knife and bathed him in bleach), *pet. denied,* 92 S.W.3d 433 (Tex.2002).

Our review of the record in this case reveals no proof of specific actions or omissions by relator that would endanger the physical health of the children. The only testimony concerning physical danger related to occasions when the children were with Marc. Dr. Harrison testified during the evidentiary hearing that, as of April 15, 2003, he considered Marc a danger to his children from a physical and/or emotional standpoint due to his intermittent explosiveness. Because there is no evidence of a danger to the children's physical health in their living environment with relator, the trial court abused its discretion to the extent it based the temporary order on a determination that residing with relator might endanger the children's physical health.

Other than testimony that relator had engaged in inappropriate communications with Marc, some of which one or more of the children witnessed, there was no testimony of specific acts or omissions by relator that would significantly impair the children's emotional development. The trial judge interviewed the children in chambers and the children expressed a desire to remain living with their mother. The children only expressed a desire to see less of their father.

Dr. Harrison testified that, in September 2002, when he first began seeing the children, they displayed some emotional difficulties. The two older children are twin girls, who are now 13 years old. Dr. Harrison found that these two girls were extremely shy, anxious, and not interested in social interactions, but were devoted to school. The youngest child, now 11 years

old, had more serious problems at that time, according to Dr. Harrison. He testified that in September 2002, this child was angry, depressed, verbally abusive, defiant, disobedient, and rebellious. Dr. Harrison also testified that, in response to Marc's disciplinary tactic of using threats, the youngest child had a variety of responses, including hurt feelings, isolation and withdrawal, aggressiveness, or "simply giving up coupled with suicidal ideation." Dr. Harrison added that he has had concerns that the twins might have suicidal thoughts, but he never observed anything to support those concerns. Dr. Harrison further testified that the children had shown marked improvement by early 2003 after counseling and relator's implementation of Dr. Harrison's recommendations for improved interaction. According to Dr. Harrison, relator brought the children for professional counseling when she thought it was necessary, and usually after some crisis. Thus, Dr. Harrison testified that the three children exhibited some emotional problems in 2002, but that there had been improvement since that time.

When testifying about the children's present condition, Dr. Harrison noted the children had experienced some regression after the altercation between the parents in February 2003; however, Dr. Harrison specifically testified that removing the children from their home and placing them in boarding school was not warranted at this time. Dr. Harrison testified that this type of placement should have been included in the options in 2002, but he has not seen anything since then to warrant placement. As to whether placement in a boarding school would be in the best interest of the children, Dr. Harrison testified as follows:

> Probably not at this point in time. I think there should be levels of care placed so that there is always a backup plan; and I would consider placement as

kind of like a, you know, tertiary plan in the event that other interventions fail.

Regarding the youngest child, Dr. Harrison was more specific. He testified that the youngest child would feel she was being punished if she were removed from relator's home. He further testified that removal from the home was not the first line of intervention at this time, even though it was a second or third line of intervention in 2002. Dr. Harrison testified that he did not, at this time, recommend boarding school for the children. Dr. Harrison's recommendation was for reduced contact between the parents and evaluations and counseling for the parents. This testimony does not support the need to remove the children from their residence and place them in boarding school.

While there is evidence that the parents have a poor relationship with each other, there is no evidence of specific acts or omissions by relator that support a finding by the trial court that the children are at risk of *significant impairment* to their emotional development. Having found that the temporary order has the effect of changing the designation of the person who has the exclusive right to determine the primary residence of the child under the final order and that no evidence supports a finding that the order is necessary because the children's present living environment with relator may endanger the children's physical health or endanger their emotional development, we find the trial court abused its discretion in entering the temporary order.

### Constitutional Rights and Application of Chapter 262

Having found an abuse of discretion by the trial court under section 156.006, we need not address the constitutional ground raised by relator. *See City of Houston v. First City*, 827 S.W.2d 462, 482 (Tex.App.-

Houston [1st Dist.] 1992, writ denied)(Cohen, J., concurring)(holding court should avoid constitutional decisions if case can be decided on nonconstitutional grounds). Further, we need not address relator's argument under Chapter 262.

**Conclusion**

Because the trial court abused its discretion in issuing the temporary order of May 6, 2003, we conditionally grant the writ of mandamus. We are confident the trial court will vacate the temporary order of May 6, 2003. If the trial court fails to do so, the writ will issue.