

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-21-00291-CV

**IN RE** Kayla **WALSER**, Relator

Original Proceeding[1]

Opinion by:    Lori I. Valenzuela, Justice

Sitting:        Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: September 22, 2021

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

In this original proceeding, relator asserts the trial court abused its discretion by (1) allowing a hearing to go forward in violation of Family Code section 156.006(b) and (2) imposing a geographic restriction on relator's right to designate the children's primary residence. On July 23, 2021, this court issued an order staying the trial court's temporary orders and requested responses. The real party in interest filed a response. We conditionally grant the petition for writ of mandamus.

### BACKGROUND

Relator, Kayla Walser, and the real party in interest, Jared Foust, are the parents of two minor children, L.C.F. and M.P.F. In 2016, the parties were divorced in Alaska. In 2017, the

---

[1] This proceeding arises out of Cause No. CVOM-21-0000015, styled *In the Interest of L.C.F. and M.P.F., Children*, pending in the 198th Judicial District Court, Bandera County, Texas, the Honorable M. Rex Emerson presiding.

Alaskan court awarded Kayla and Jared "joint legal custody" of L.C.F. and M.P.F., and awarded Kayla "primary physical custody with permission to move out of state." The court did not impose a geographic restriction. Kayla later moved to Texas with the children, at which time the Alaskan court modified visitation in anticipation of Jared also moving to Texas. Kayla then moved with the children to Pennsylvania, where her family is located.

Jared filed a petition to modify the parent-child relationship in Bandera County, Texas, in which he asked, among other things, that he and Kayla be appointed joint managing conservators of the children and he be awarded the exclusive right to designate the children's primary residence. Jared attached his affidavit to the petition. On June 10, 2021, the trial court conducted a hearing on the petition. At the conclusion of the hearing, on the record, the trial court stated, among other things:

> . . . I want to emphasize these are temporary orders only, and just confirming what I believe is what the Alaska order says is that the mother and father are joint managing conservators with mom having the exclusive right to establish the residence.
> However, that residence is going to have to be in Bandera, Bexar or a contingent county, okay, in the state of Texas.

On July 20, 2021, Kayla filed her petition for writ of mandamus, to which Jared filed a response.

**STANDARD OF REVIEW**

As the party seeking mandamus relief, Kayla must show both that the trial court clearly abused its discretion, and that she has no adequate remedy by appeal. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). Trial courts have no discretion in determining

- 2 -

what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

To demonstrate an abuse of discretion, a party seeking mandamus relief must show that the trial court "could have reached only one conclusion and that a contrary finding is thus arbitrary and unreasonable." *In re State Farm Lloyds*, 520 S.W.3d 595, 604 (Tex. 2017) (orig. proceeding). An "appellate court may not substitute its judgment for the trial court's determination of factual or other matters committed to the trial court's discretion, even if the mandamus court would have decided the issue differently." *Id.* Alternatively, the party may demonstrate that the court erred in "'determining what the law is or applying the law to the facts,' even when the law is unsettled." *Id.* In deciding whether to grant mandamus relief, we also look to whether an appeal is an inadequate remedy. *Walker*, 827 S.W.2d at 842. An appeal is not an adequate remedy when a party complains of temporary orders such as the one here. Temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are interlocutory and there is no statutory provision for appeal of these orders. *See In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

## DISCUSSION

Kayla raises two complaints in her petition. First, she asserts the trial court abused its discretion by proceeding to conduct a hearing in violation of Family Code section 156.006(b) because Jared's affidavit was insufficient. Second, she contends the evidence is insufficient to support a finding that the children's present circumstances would significantly impair their health or emotional development.

## A.    Family Code Section 156.006

Section 156.006 provides, in part, as follows:

(b) While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and:
> (1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development . . ..

(b-1) A person who files a motion for a temporary order authorized by Subsection (b)(1) shall execute and attach to the motion an affidavit on the person's personal knowledge . . . that contains facts that support the allegation that the child's present circumstances would significantly impair the child's physical health or emotional development. The court shall deny the relief sought and decline to schedule a hearing on the motion unless the court determines, on the basis of the affidavit, that facts adequate to support the allegation are stated in the affidavit. If the court determines that the facts stated are adequate to support the allegation, the court shall set a time and place for the hearing.

TEX. FAM. CODE § 156.006(b)(1), (b-1).

## B.     Section 156.006(b-1) Affidavit

Under section 156.006(b-1), if the court found the facts stated in Jared's affidavit to be inadequate, then the court should have "den[ied] the relief sought and decline[d] to schedule a hearing on [Jared's petition]."  At the start of the hearing, Kayla argued the "affidavit is not sufficient enough and does not contain the statutory requirement of significant impairment to flip custody in temporary orders and to impose a geographic restriction . . .."  The court stated, "let's proceed with a look at the modification, but the information is not in the affidavit to flip in custody at this time."  The court then proceeded to hold the hearing.  Kayla argues the court abused its discretion by going forward with the hearing.

Because the trial court found Jared's affidavit inadequate the court erred by going forward with the hearing.  However, "any error is harmless if the testimony admitted during the hearing supports an allegation that the child[ren]'s environment may significantly impair [their] physical

health or emotional development." *In re A.C.S.*, 157 S.W.3d 9, 18-19 (Tex. App.—Waco 2004, no pet.); *In re C.G.*, 04-13-00749-CV, 2014 WL 3928612, at *3 (Tex. App.—San Antonio Aug. 13, 2014, no pet.) (mem. op.). Therefore, we next examine the record for evidence to support a finding that the children's environment may significantly impair their physical health or emotional development.

**C.      Significant Impairment**

"Section 156.006 imposes a high burden on the movant to present evidence that a child's present circumstances are *significantly* impairing his or her physical health or emotional development." *In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.) (emphasis in original) (applying significant impairment standard to temporary orders that had effect of creating a geographical restriction). Because the "significant impairment" standard is a high one, the movant—here, Jared—must present evidence of bad acts or omissions committed against the children. *In re Eddins*, No. 05-16-01451-CV, 2017 WL 2443138, at *4 (Tex. App.—Dallas June 5, 2017, orig. proceeding) (mem. op.); *see also C.G.*, 2014 WL 3928612, at *8 (placing burden on movant). Furthermore, "[b]ecause each child's circumstances are different, conditions that could significantly impair the emotional development of one child may not affect another child as strongly. Thus, specific allegations as to how a child's emotional development will be significantly impaired are statutorily required." *In re Strickland*, 358 S.W.3d 818, 822-23 (Tex. App.—Fort Worth 2012, orig. proceeding).

Jared testified he has been living in San Antonio, Texas since November 2019 with his current wife, his six-year-old step-daughter, and the couple's twenty-four-month-old son. He testified he has a good and consistent relationship with L.C.F. and M.P.F. Jared described the trailer house in which Kayla and the children are living while in Pennsylvania as "in shambles and disgusting," with all three of them "living in the same room, in the same bed with her parents and

her younger brother." However, he admitted the only time he saw this house was ten to eleven years earlier and he has no idea what the current living conditions are. Jared said he lives in a two-bedroom house, with four people. He said L.C.F. and M.P.F. appear to be in good health, although Kayla has not kept him informed of doctor appointments. The remainder of Jared's testimony centered on Kayla's past unsuccessful attempts to have his parental rights terminated and to obtain restraining orders in Pennsylvania against him, and Kayla's inconsistent responses to his attempts to communicate with the children.

Kayla testified she is currently living in Pennsylvania with L.C.F. and M.P.F., her parents, and her thirteen-year-old brother. She said her parents have enlarged the three-bedroom trailer home in which they live and she thinks they do "really well" for having six people in the trailer. She shares her bedroom with her daughter and her son shares a bedroom with her brother. A three-year-old son with her current husband lives with his father in Texas. She believed it is necessary to remain in Pennsylvania for "the safety" of her children and she believed it was in their best interest not to have seen their father in the preceding six months. However, she agreed it was not in their best interest to not see their half-siblings. She admitted her attempts to obtain restraining orders in Pennsylvania were not successful and she had not attempted to obtain a restraining order in Texas.

When asked what her safety concerns entailed, Kayla said Jared told her his current wife ("Faith") had put a gun to her own head while L.C.F. and M.P.F. were in the house. Therefore, Kayla was concerned about her children being around Faith based on Faith's mental health issues. She said she also had concerns about Jared's mental health.

According to Kayla, Jared has not asked her about the children's Spring Break or Summer visitation. If he had asked, she would have brought the children to Texas. She said she has consistently allowed telephone communications between the children and Jared. Kayla said the

children are engaged in various activities and are doing "fabulously" and "wonderfully" in school in Pennsylvania. Both children separately see a counselor once a week. She admitted she could have been more informative about the children's medical appointments, but she said Jared never asked and, if he had, she would have kept him informed.

Even accepting all of Jared's allegations as true, the evidence is legally insufficient to support an implied finding that the children's present circumstances in Pennsylvania would significantly impair their physical health or emotional development. *See C.S.*, 264 S.W.3d at 874 (concluding that although allegations indicated pattern of parental alienation, allegations did not support finding that children's present environment may endanger their physical health or significantly impair their emotional development); *In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) ("Taking as true Winfree's evidence that Charles had interfered in Winfree's visitation and communications with C.S.C., that the child frequently wore dirty, ill-fitting, or damaged clothes and shoes, and that her hair, body, and underwear were frequently dirty, unkempt, and soiled, that evidence does not rise to the level of showing 'significant impairment.'"); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (per curiam) (mem. op.) (evidence home messy and unsanitary, child lacked supervision, and came home in freezing temperatures without coat or sweater insufficient to show significant impairment of physical health or emotional development); *compare with In re A.C.S.*, 157 S.W.3d at 18 ("Scott testified in some detail that Andrea was limiting his access to the children. He described a particular visit in South Carolina during which one of his daughters cried because she was not going to be able to see her paternal grandmother and cousins. Thus, he presented evidence which would support an allegation that the children's environment may 'significantly impair [their] emotional development.'").

On this record, we conclude the trial court did not have sufficient evidence upon which to exercise its discretion to enter a temporary order that had "the effect of creating a geographic area . . . within which a conservator must maintain the child[ren]'s primary residence . . .." With no evidence to support findings that the children's present circumstances would significantly impair their physical health or emotional development, coupled with Jared's own admission that he has a good and consistent relationship with L.C.F. and M.P.F. and the children appear to be in good health, we conclude the trial court erred by imposing a geographic restriction.

## CONCLUSION

The trial court abused its discretion by holding a hearing on Jared's petition after determining his affidavit did not satisfy the requirements of section 156.006(b–1). The court further abused its discretion in rendering a temporary order that had "the effect of creating a geographic area . . . within which a conservator must maintain the child[ren]'s primary residence . . .." We conditionally grant Kayla's requested relief and direct the trial court to vacate that portion of its temporary order stating, "residence is going to have to be in Bandera, Bexar or a contingent county, okay, in the state of Texas" no later than fifteen days from the date of this opinion. Writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

Lori I. Valenzuela, Justice