

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00325-CV

**IN RE** Christina **REID**

Original Mandamus Proceeding[1]

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: July 20, 2022

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relator Christina Reid filed a petition for writ of mandamus complaining of the trial court's temporary orders that remove her right to designate the primary residence of her three children and give that right to Real Party in Interest Patrick Couch. Reid contends the order violates section 156.006(b) of the Texas Family Code because, without sufficient evidence, the orders change the parent with the right to designate the primary residence of the children during a modification proceeding.

We conditionally grant the writ.

---

[1] This proceeding arises out of Cause No. 2020-CI-18954, styled *In the Interest of M.R.C., T.J.C., and C.F.C., Children*, pending in the 407th Judicial District Court, Bexar County, Texas, the Honorable Martha Tanner presiding.

## BACKGROUND

During their marriage, Christina Reid and Patrick Couch had three children: M.R., T.J., and C.F. At the time of the underlying proceeding, the children's ages were 16, 14, and 8. Reid and Couch divorced in April 2021; the decree named each as joint managing conservators with Reid designated as the parent with the right to designate the primary residence of the children.

Less than six months later, on October 5, 2021, Couch filed a petition to modify the parent-child relationship for all three children. Couch's petition alleged, among other things, that Reid had failed to abide by multiple sections of the parties' divorce decree. In an affidavit filed on October 21, 2021 (the 2021 Affidavit), Couch alleged Reid "knowingly and willfully mentally abused and alienated" M.R., T.J., and C.F. by making several disparaging comments to M.R. and C.F. regarding the marital home and child support payments. Couch also alleged Reid refused to let the children communicate with Couch and withheld C.F.'s medical information from Couch. The 2021 Affidavit does not contain any specific allegations regarding Reid and T.J.

On February 2, 2022, Couch filed a motion for temporary orders. In his motion, Couch requested, inter alia, that he should be named as the parent with the exclusive right to designate the primary residence of the children. Couch also requested that M.R. and T.J., who are over the age of twelve, be interviewed in chambers by the trial court. Couch then filed an amended motion for temporary orders and a new affidavit (the 2022 Affidavit). Couch's amended motion modified his request to seek only that M.R. be interviewed in chambers.

On March 17, 2022, a hearing was held on Couch's amended motion for temporary orders. Couch appeared represented by counsel; Reid appeared pro se. At the conclusion of the hearing, the trial court rendered temporary orders that removed Reid and substituted Couch as the parent with the right to designate the primary residence of the children. The trial court's temporary orders found the orders were "for the safety and welfare and in the best interest of [M.R., T.J., and C.F.]."

On May 31, 2022, Reid filed her petition for writ of mandamus, to which Couch filed a response.

**STANDARD OF REVIEW**

To be entitled to mandamus relief, Reid must show the trial court committed a clear abuse of discretion and that Reid has no adequate remedy by appeal. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). "[A] trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). When assessing the rendition of temporary orders, "[l]egal and factual sufficiency challenges to the evidence are relevant factors in assessing whether the trial court abused its discretion." *In re Lee*, No. 04-19-00440-CV, 2019 WL 3642640, at *1 (Tex. App.—San Antonio Aug. 7, 2019, orig. proceeding) (mem. op.). "Temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are interlocutory and there is no statutory provision for appeal of these orders." *In re Walser*, No. 04-21-00291-CV, 2021 WL 4296048, at *1 (Tex. App.—San Antonio Sept. 22, 2021, orig. proceeding) (mem. op.).

**SIGNIFICANT IMPAIRMENT**

In her first issue, Reid asserts the trial court abused its discretion by rendering temporary orders that remove her right to designate the primary residence of the children because there is insufficient evidence that the children's residing with her significantly impairs their physical health or emotional development.

**A.      Statutory Prerequisite for Change of Designation**

Section 156.006(b) provides, in part, as follows:

> (b) While a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the

child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence, under the final order unless the temporary order is in the best interest of the child and:

> (1) the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development; [or]
>
> . . . .
>
> (3) the child is 12 years of age or older and has expressed to the court in chambers . . . the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child.

TEX. FAM. CODE ANN. § 156.006(b)(1), (3).

## B.     Parents' Arguments

Reid argues Couch's motion for temporary orders and his accompanying affidavit, even if taken as true, do not significantly impair the children's physical health or emotional development.

Couch contends just the opposite, that his 2021 Affidavit, 2022 Affidavit, and uncontradicted testimony at the hearing show the children's present circumstances significantly impair the children's physical health and emotional development.

## C.     Applicable Law

### 1.     Changing Designated Parent

When a trial court issues an order changing the designation of the parent with the right to determine the primary residence of a child during the pendency of a modification suit, the trial court must find that the modification is in the child's best interest.[2]  *Id.*(b).  If the trial court finds a modification is in the child's best interest, the trial court is then required to find either "that the

---

[2] The non-exhaustive factors to determine the best interest of a child include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent, which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *In re C.S.*, No. 04-20-00421-CV, 2021 WL 5496159, at *3 (Tex. App.—San Antonio Nov. 24, 2021, no pet.) (mem. op.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).

children's living environment with [R]elator may endanger their physical health or significantly impair their emotional development" or that a child twelve years of age or older has expressed to the court in chambers the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child. *In re Ostrofsky*, 112 S.W.3d 925, 929 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *see* TEX. FAM. CODE ANN. § 156.006(b)(1), (3).

### 2. High Burden to Change

Emphatically, "Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one . . . requiring evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent." *In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *2 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.); *see In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.). To satisfy this "high burden," the movant must "present evidence of bad acts or omissions committed against the children." *In re Walser*, 2021 WL 4296048, at *2. The evidence of bad acts or omissions must be factually and legally sufficient for each child individually, "[b]ecause each child's circumstances are different, conditions that could significantly impair the emotional development of one child may not affect another child as strongly." *In re Strickland*, 358 S.W.3d 818, 822–23 (Tex. App.—Fort Worth 2012, orig. proceeding.).

### 3. Evidence of Present Circumstances

Moreover, the statute requires a finding of sufficient evidence for each child that his "present circumstances—not past circumstances—and evidence that remaining in those circumstances during the pendency of the custody proceedings would significantly impair their physical or emotional development." *In re Barker*, No. 03-21-00036-CV, 2021 WL 833970, at *7

(Tex. App.—Austin Mar. 4, 2021, orig. proceeding) (mem. op.). Thus, specific individual allegations, supported by sufficient evidence, as to how each child's physical health or emotional development will be significantly impaired in their present circumstances is statutorily required. *See id.*; *see also In re Coker*, No. 03-17-00862-CV, 2018 WL 700033, at *5 (Tex. App.—Austin Jan. 23, 2018, orig. proceeding) (mem. op.).

**D.      2021 Affidavit is Not Evidence**

Couch asserts the trial court was within its discretion to consider his 2021 Affidavit filed shortly after he filed his original petition to modify the parent-child relationship. However, the 2021 Affidavit concerns the children's circumstances as they existed on October 21, 2021. The hearing took place on March 17, 2022—one hundred and forty-seven days later. Further, the 2021 Affidavit was not offered or admitted into evidence. *See Shah v. Star Anesthesia, P.A.*, 580 S.W.3d 260, 266 (Tex. App.—San Antonio 2019, no pet.); *Ahmed v. Shimi Ventures*, *L.P.*, 99 S.W.3d 682, 684 n.2 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("[A]bsent the parties' agreement to treat the affidavits as evidence, affidavits attached to pleadings and not admitted into evidence do not constitute evidence."). The 2021 Affidavit, at the time of the hearing on March 17, 2022, was no evidence of the children's present circumstances. *See In re Barker*, 2021 WL 833970, at *7.

**E.      2022 Affidavit is Not Evidence**

Couch attached only the 2022 Affidavit to his amended motion for temporary orders. In the 2022 Affidavit, Couch alleged Reid "knowingly and willfully mentally abused and alienated" M.R., T.J., and C.F by (1) accusing M.R. of doing drugs, M.R. being molested, M.R. being bribed by Couch, M.R. being mentally unstable, and Reid taking her anger out on M.R.; (2) refusing to let M.R. live with Couch; (3) making several disparaging comments about Couch to M.R while she removed his journal and furniture from M.R.'s room; (4) smothering C.F. with a pillow or her hand; (5) failing to meet M.R.'s, T.J.'s, and C.F's educational needs; and (6) refusing to surrender

possession of M.R., T.J., and C.F. However, just like Couch's 2021 Affidavit, the 2022 Affidavit attached to Couch's motion was not offered or admitted into evidence during the hearing; therefore, we do not consider the 2022 Affidavit as evidence in support of the trial court's ruling. *See Ahmed*, 99 S.W.3d at 684 n.2; *see also In re E.W.*, No. 05-01-01463-CV, 2002 WL 1265541, at *2 (Tex. App.—Dallas June 7, 2002, pet. denied) (not designated for publication).

**F.      Testimony at Hearing**

Nevertheless, during the hearing, Couch testified to the validity of the alleged fight between Reid and M.R., during which Reid allegedly removed furniture from M.R.'s room and blocked him from leaving the room. Couch also testified to the allegation that, according to what he heard from M.R., Reid had assaulted C.F. by smothering him. Finally, Couch testified C.F. had a mental episode because of Reid and that Reid was not meeting the educational needs of all three children.

We turn now to the present circumstances evidence pertaining to the significant impairment of the physical health or emotional development of the children. *See In re Strickland*, 358 S.W.3d at 822–23.

**G.      Evidence of Significant Impairment for M.R.**

Regarding M.R.'s present circumstances, Couch testified that: Reid locked M.R. out of the house on October 5, 2021, because she was angry with him; M.R. and C.F. have asked Couch if he is "jacking" with the Internet at Reid's home; Reid told M.R. about the modification suit but did not share the details with him; M.R. has been late to school twenty-one times and absent three times; Reid failed to attend a school meeting for M.R. and T.J.; M.R. is "stressed" when Couch picks him up for visits; and M.R. does not like to go back to Reid at the end of Couch's possession periods.

Furthermore, Couch testified that M.R. told him that on February 16, 2022, he desired to live with Couch. When Reid learned about M.R.'s decision, Couch alleges, Reid began arguing

with M.R. and removed personal items from his room. Couch asserted that it was during this argument that Reid physically blocked M.R. from leaving the room and alleged M.R. was doing drugs, being molested, being bribed by Couch, and was mentally unstable.[3]

Couch's testimony, without more, does not show that M.R.'s present circumstances significantly impair his physical health or emotional development. *See In re Kyburz*, No. 05-15-01163-CV, 2015 WL 6935912, at *2 (Tex. App.—Dallas Nov. 10, 2015, orig. proceeding) (mem. op.) (noting that testimony that the children's clothes did not fit, and they looked "disheveled" was insufficient to show significant impairment); *In re Serio*, 2014 WL 7458735, at *2; *In re Rather*, No. 14–11–00924–CV, 2011 WL 6141677, at *2 (Tex. App.–Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.).

We conclude Couch's testimony is insufficient to meet the elevated burden to show significant impairment for M.R. *See In re Charles*, No. 03-17-00731-CV, 2017 WL 5985524, at *4 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) (finding interference with visitation, communication; that the child wore dirty or unkempt clothing; and that the child appeared dirty or unkempt did not rise to a level of showing significant impairment); *see also In re Coker*, 2018 WL 700033, at *5.

Further, there is no indication in the temporary orders that the trial court's decision was based on M.R.'s in-chambers interview. Thus, the trial court's findings rely solely on section 156.006(b)(1), and on this record, there is insufficient evidence of significant impairment. Therefore, the trial court abused its discretion when it changed the parent with the right to designate M.R.'s primary residence.

---

[3] Reid contested these allegations through her controverting testimony.

**H.     Evidence of Significant Impairment for C.F.**

Regarding C.F.'s present circumstances, Couch testified that around March 6, 2022, M.R. told him C.F. and Reid had "gotten in an altercation" and that Reid "physically assaulted" C.F. Couch asserted that M.R. said it sounded as if Reid was "smothering" C.F. Couch added that C.F. stated Reid told him that Couch did not want Reid and the children living in the marital home and that Couch did not pay Reid child support payments. Couch also testified that C.F. has been late to school eleven times and absent five times.[4]

Couch's testimony, even if taken as true, does not show that C.F.'s present circumstances significantly impair his physical health or emotional development. *See In re Coker*, 2018 WL 700033, at *5 (opining that allegations that a child's schedule has been inconsistent and that a parent may be alienating the child or that a parent occasionally does not supervise a child, without more, does not satisfy the significant impairment standard); *In re Escamilla,* No. 0402-00258-CV, 2002 WL 1022945, at *2 (Tex. App.—San Antonio May 22, 2002, orig. proceeding) (mem. op.).

**I.     Evidence of Significant Impairment for T.J.**

Regarding T.J.'s present circumstances, Couch testified he called T.J. on March 3, 2022 and T.J. asked him questions about Couch and Reid's child support arrangement. Couch also testified that T.J. has been late to school twenty times and absent four times. Couch's testimonial evidence, without more, does not show that T.J.'s present circumstances significantly impair his physical health or emotional development. *See id.*

**J.     Abuse of Discretion**

Having reviewed the evidence with respect to each child's present circumstances, we conclude it does not meet the high burden to show a significant impairment of the physical health

---

[4] Reid contested these allegations through her controverting testimony.

or emotional development of any of the children. *See In re J.W.*, 2019 WL 2223216, at *4; *In re Serio*, 2014 WL 7458735, at *2.

## PREMATURE MODIFICATION

For her second issue, Reid contends that the trial court abused its discretion by modifying the exclusive right to designate the primary residence of the children within one year of the entry of her and Couch's divorce decree. Because Reid's first issue was dispositive, we need not address her second issue.

## CONCLUSION

Because we have concluded that the trial court abused its discretion in rendering the temporary orders, and Reid does not have an adequate appellate remedy, we conditionally grant Reid's requested relief and direct the trial court to vacate its temporary orders of March 17, 2022, within fifteen days of this opinion. The writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

Patricia O. Alvarez, Justice