

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00705-CV

**IN RE** Jeremie **ADKINS**

Original Mandamus Proceeding[1]

Opinion by:    Irene Rios, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: February 21, 2024

PETITION FOR WRIT OF MANDAMUS DENIED

Relator Father filed a petition for writ of mandamus complaining of the trial court's temporary order that changed his exclusive rights to designate the primary residence of his two children and to enroll them in school and designated Mother,[2] real party in interest, in his stead. Father contends the order violates section 156.006(b) of the Texas Family Code because, without sufficient evidence, the order changes the parent with the right to designate the primary residence of the children during a modification proceeding. TEX. FAM. CODE ANN. § 156.006(b). Moreover,

---

[1] This proceeding arises out of Cause No. 2015-CI-03688, styled *In the Interest of B.A. and D.A., Children*, pending in the 408th Judicial District Court, Bexar County, Texas, the Honorable Angelica I. Jimenez presiding. The Honorable Marisa Flores both conducted the hearing and rendered the order that extended the temporary order at issue in this mandamus.

[2] We use initials and pseudonyms to protect the identity of the minor children referenced in this opinion.

Father asserts the facts set forth in Mother's affidavit inadequately support the allegations the trial court considered when authorizing the hearing for temporary orders. *See id.* § 156.006(b–1).

For the reasons below, we deny Father's petition for a writ of mandamus.

## BACKGROUND

In the parties' final decree of divorce, Mother and Father were named joint managing conservators[3] of D.A. and B.A., with Father having the exclusive right to designate the children's primary residence. Approximately eight years later, Mother filed a petition to modify the parent-child relationship that included a request for temporary orders designating Mother as the parent with the exclusive right to designate the children's primary residence. Mother attached a sworn affidavit stating, among other things, that Father continues to minimize and leave unaddressed the treatment to D.A.'s infected toe and B.A.'s mental health concerns, including B.A.'s on-going self-harm. D.A., a male, and B.A., a female, were fourteen years of age and eleven years of age respectively at the time of the hearing.

On May 5, 2023, the trial court issued an ex parte temporary restraining order preventing Father from removing the children from Mother's control, custody, and possession. Furthermore, the temporary restraining order named Mother as the parent with the exclusive right to designate the children's primary residence, along with the exclusive right to enroll the children in school. Following the hearing on Mother's motion for temporary orders and the ex parte temporary restraining order, the trial court rendered a temporary order naming Mother as the parent with the exclusive right to designate the children's primary residence and enroll the children in school.

---

[3] Father's parents, D.A.'s and B.A.'s paternal grandparents, were named as intervenors in Mother and Father's divorce proceedings and later designated as "non-parent joint managing conservator[s]" of the children in the final divorce decree. Grandmother, intervenor non-parent joint managing conservator, participated in the hearing at issue in the lower court proceedings, but did not file any responsive pleadings with this court in this mandamus proceeding. We do not further address the grandparents' involvement in this case.

Father filed a petition for writ of mandamus asking this court to vacate the trial court's temporary order.

## STANDARD OF REVIEW

To be entitled to mandamus relief, Father must show the trial court committed a clear abuse of discretion and that Father has no adequate remedy by appeal. *See In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (per curiam). "[A] trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011). When assessing the rendition of temporary orders, legal and factual sufficiency challenges to the evidence are relevant factors to determine whether the trial court abused its discretion. *In re Lee*, No. 04-19-00440-CV, 2019 WL 3642640, at *1 (Tex. App.—San Antonio Aug. 7, 2019, orig. proceeding) (mem. op.). "Temporary orders, entered while a motion to modify in a suit affecting the parent-child relationship is pending, are interlocutory and there is no statutory provision for appeal of these orders." *In re Walser*, 648 S.W.3d 442, 445 (Tex. App.—San Antonio 2021, orig. proceeding); *see also In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Thus, Father has no adequate remedy by appeal.

## APPLICABLE LAW - SIGNIFICANT IMPAIRMENT

While subsection 156.006(a) of the Texas Family Code allows a court to render temporary orders in a suit for modification, subsection 156.006(b)(1) provides, in part, that

> [w]hile a suit for modification is pending, the court may not render a temporary order that has the effect of creating a designation, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child . . . under the final order unless the temporary order is in the best interest of

the child and[,] the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development[.]

TEX. FAM. CODE ANN. § 156.006(b)(1).[4]

If the trial court finds a modification is in the child's best interest, the trial court must also find "that the children's living environment with relator may endanger their physical health or significantly impair their emotional development[.]" *In re Ostrofsky*, 112 S.W.3d at 929 (internal quotation marks omitted); *see* TEX. FAM. CODE ANN. § 156.006(b)(1).

Emphatically, "Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one . . . requiring evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent." *In re Serio*, No. 03-14-00786-CV, 2014 WL 7458735, at *2 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op. (citations omitted)); *see In re J.W.*, No. 02-18-00419-CV, 2019 WL 2223216, at *3 (Tex. App.—Fort Worth May 23, 2019, orig. proceeding) (mem. op.). To satisfy this "high burden," the movant "must present evidence of bad acts or omissions committed against the children." *In re Walser*, 648 S.W.3d at 446. The evidence of bad acts or omissions must be sufficient for each child individually, "[b]ecause each child's circumstances are different, conditions that could significantly impair the emotional development of one child may not affect another child as strongly." *In re Strickland*, 358 S.W.3d 818, 822 (Tex. App.—Fort Worth 2012, orig. proceeding).

Moreover, the statute requires a finding of sufficient evidence for each child that his "*present* circumstances—not past circumstances—and evidence that remaining in those circumstances during the pendency of the custody proceedings would significantly impair their physical or emotional development." *In re Barker*, No. 03-21-00036-CV, 2021 WL 833970, at *7

---

[4] This provision contains other permissible grounds that do not apply here. *See* TEX. FAM. CODE ANN. § 156.006(b)(2), (3).

(Tex. App.—Austin Mar. 4, 2021, orig. proceeding) (mem. op.). Thus, specific allegations, supported by sufficient evidence, as to how each child's physical health or emotional development will be significantly impaired in their present circumstances is statutorily required. *See id*.; *see also In re Coker*, No. 03-17-00862-CV, 2018 WL 700033, at *5 (Tex. App.—Austin Jan. 23, 2018, orig. proceeding) (mem. op.).

**DISCUSSION**

At the hearing on temporary orders, the parties presented conflicting testimony and evidence regarding the current medical care and needs of each child. This testimony and evidence included the severity of D.A.'s toe infection and the extent to which each party took to treat D.A.'s toe. Mother scheduled the initial medical consultation regarding D.A.'s toe as well as scheduled the eventual more invasive medical attention by a specialist necessary to address the ongoing infection which will allow D.A.'s toe to finally heal.

With respect to B.A., the parties presented conflicting evidence concerning their approaches to providing B.A. with mental health treatment addressing B.A.'s depression, her self-harm in cutting herself, and her suicidal ideations. Significant to Father's and Mother's differing opinions regarding the necessity to seek mental health treatment for B.A., Mother secured B.A.'s appointment and evaluation with a psychiatrist, who prescribed B.A. medication. Father, on the other hand, did not seek any treatment for B.A. and strongly disagreed with the medications prescribed to her.

A caseworker with Child Protective Services also testified during the hearing on temporary orders about her investigation of a report of Father's neglectful supervision of D.A. and B.A. made by a confidential source. The caseworker spoke to the source of the complaint and Mother. On May 1, 2023, the caseworker then conducted a home visit and spoke to Father, D.A., and B.A. in person. Based on the caseworker's observations, she expressed concern about D.A.'s and B.A.'s

immediate health and safety for similar reasons as explained above. The caseworker testified Father became agitated during the visit, as well as argumentative when the caseworker made recommendations. The caseworker stated Father also refused to sign the safety plan she presented to him. Thus, the caseworker opined it was necessary to have Mother act as the "protective parent," meaning the children should live exclusively with Mother after she entered a safety plan to assure the children receive necessary medical attention, and Father can begin visitation with the children once the children's medical needs are addressed.

Having reviewed the record—and recognizing that, as fact-finder, the trial court was free to resolve the conflicting evidence in Mother's favor—we conclude there was a sufficient basis from which the trial court could have concluded that temporarily naming Mother as the joint managing conservator with the exclusive right to designate the children's primary residence was in the children's best interest and that the children's current circumstances would significantly impair the children's physical or emotional development. *See In re Ostrofsky*, 112 S.W.3d at 929.

The trial court did not abuse its discretion in rendering the temporary order during the pendency of the modification proceedings naming Mother as the person with the exclusive right to designate the children's primary residence and enroll them in school. *See* TEX. FAM. CODE ANN. § 156.006(b)(1). Furthermore, because we conclude the trial court did not abuse its discretion in rendering the temporary order under section 156.006(b)(1), we further conclude Mother's affidavit was sufficient under section 156.006(b–1) to authorize the trial court to conduct the hearing to consider the temporary order. *See id.* § 156.006(b)(1), (b–1). Therefore, we deny Father's petition for writ of mandamus.

Irene Rios, Justice